677 So.2d 553 (1996)
STATE of Louisiana, Appellee,
v.
Paul A. JASPER, Appellant.
No. 28187-KA.
Court of Appeal of Louisiana, Second Circuit.
June 26, 1996.
*557 Wilson Rambo, Robert Noel, Monroe, for Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, Madeleine Slaughter, Assistant District Attorney, for Appellee.
Before HIGHTOWER, STEWART and GASKINS, JJ.
STEWART, Judge.
A Ouachita Parish Grand Jury indicted defendant, Paul A. Jasper, with the second degree murder of Donnell Jones, a violation of LSA-R.S. 14:30.1. The jury convicted him of the responsive verdict of manslaughter. LSA-R.S. 14:31; LSA-C.Cr.P. Art. 814. Defendant appeals and raises ten assignments of error. For the following reasons, the sentence and conviction are affirmed.

FACTS
On the evening of July 21, 1993, defendant and a group of men were drinking beer and socializing in an apartment a few blocks away from the Kingston Apartments. The Kingston Apartments Complex was located on King Street in Monroe, directly across the street from the Cypress Manor Apartments. The other members of the group included Jason Harris, Vernon Johnson, Ronald Powell, and Michael Robinson.
At some point during the party, Jason Harris entered the apartment, and stated that Daron Hall was in the area of the Kingston/Cypress Manor complexes. Hall, who had been released from prison earlier that day, was in the area to visit a friend. Hall had been convicted of negligent homicide in the killing of the defendant's cousin. Upon hearing Hall's name, defendant asked Johnson for the loaded .380 caliber Sterling Arms pistol that was being passed around the room. Johnson handed the gun to defendant, who then left the apartment unnoticed by the others.
After defendant's sister noted his absence, the members of the group left the apartment in search of defendant. The members of the "search" party were heavily armed. The group found defendant in a verbal confrontation with Hall outside of the Cypress Manor Apartments. At that point, Hall's companions pulled him into a parked vehicle belonging to Rokea Little.
Defendant and the group walked back toward the apartment where they had been socializing earlier in the evening. As they approached a breezeway running through the Cypress Manor complex, Little's car passed by them heading north on King Street. Hall was riding in the front passenger seat of Little's car. Harris mentioned something to the group about shooting at Hall in the vehicle and then fired his gun. According to *558 Johnson, he and defendant also began shooting at the car. Derrick Brooks, a passenger in Little's car, identified defendant as one of the shooters as well.
When the shooting began, the victim, Donnell Jones, was sitting on the balcony in front of the entrance to his sister's second floor apartment at the Kingston complex. As the shooting erupted, Jones attempted to seeking cover inside the apartment. He was struck by a bullet from the shooting. Jones died from injuries sustained as the result of a gunshot wound to his brain. Little's vehicle was struck, but none of the occupants were injured.
Detective Kerry Black of the Monroe Police Department investigated the shooting. Black testified through his investigation, he determined defendant, Harris, Powell, and Johnson to be suspects. Pursuant to an interview with Harris, the police recovered the weapons used in the shooting. Black testified that the .380 caliber Sterling Arms pistol, the weapon Johnson identified defendant as using, was found along with seven rounds of ammunition.
As to the crime scene area, Black stated that the police located fired .9mm caliber cartridge cases and fired .380 caliber cartridge cases near apartment 605 of the Cypress Manor complex. He also indicated that the police recovered a bullet fragment, jacket, and core, as well as, the bullet retrieved from the victim's body.
Richard Beighley, an expert in the area of firearms identification, examined the weapons recovered in connection with the shooting. He tested the weapons along with the nine fired .9mm caliber cartridge cases, two fired .380 caliber cartridge cases, a bullet jacket, a bullet core, and a bullet that police submitted to him for testing. Beighley eliminated defendant's weapon, the .380 caliber pistol Sterling Arms pistol, as firing any of the .380 caliber cartridge cases.

DISCUSSION

Assignment No. 1
The defendant urges that the evidence presented herein is legally insufficient to support the verdict of the jury in convicting the defendant of manslaughter. The defendant was charged with second degree murder. The jury returned a compromise responsive verdict of manslaughter, as allowed under LSA-C.Cr.P. Art. 814. If the evidence adduced at trial was sufficient to support a conviction of the charged offense, the jury's verdict is authorized. State v. Holland, 544 So.2d 461 (La.App.2d Cir.1989), writ denied, 567 So.2d 93 (La.1990).
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Cotton, 25,940 (La.App.2d Cir. 03/30/94), 634 So.2d 937; State v. Bellamy, 599 So.2d 326 (La.App.2d Cir.), writ denied, 605 So.2d 1089 (La.1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Ford, 26,422 (La.App.2d Cir. 09/21/94), 643 So.2d 293; State v. Lott, 535 So.2d 963 (La.App.2d Cir. 1988).
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. LSA-La. Const., Art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App.2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Mitchell, 26,070 *559 (La.App.2d Cir. 06/22/94), 639 So.2d 391, writ denied, 94-1981 (La. 12/16/94), 648 So.2d 387; State v. Rogers, 494 So.2d 1251 (La.App.2d Cir.1986), writ denied, 499 So.2d 83 (La. 1987).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Carey, 628 So.2d 27 (La.App.2d Cir.1993), writ denied, 94-0018 (La. 03/25/94), 635 So.2d 236; State v. Braswell, 605 So.2d 702 (La.App.2d Cir.1992); State v. Emerick, 499 So.2d 195 (La.App.2d Cir.1986).
The defendant was charged with violation of R.S. 14:30.1 second degree murder. The statute states in pertinent part, second degree murder is the Killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. Specific intent is the state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act. State v. Lindsey, 543 So.2d 886 (La.1989); cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); State v. McCray, 621 So.2d 94 (La.App.2d Cir.1993); La.R.S. 14:10(1). Specific intent need not be proven as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La. 1982); State v. Taylor, 621 So.2d 141 (La. App.2d Cir.1993), writ denied, 93-2054 (La. 2/11/94), 634 So.2d 371. Specific intent is a fact issue to be determined by the trier of fact. State v. Butler, 322 So.2d 189 (La. 1975); State v. Brown, 618 So.2d 629 (La. App.2d Cir.), writ denied, 624 So.2d 1222 (La.1993).
Defendant argues that the state failed to prove he specifically intended the death of anyone in Little's vehicle in order to show the transferred intent to kill Jones. To support his argument, the defendant relies heavily on the decision in State v. Pierre, 93-0893 (La. 02/03/94), 631 So.2d 427, a recent case addressing the concept of principals. In Pierre, the defendant was convicted of manslaughter after having been charged and prosecuted as a principal to second degree murder. The state had conceded at trial that the defendant did not kill the victim, but argued that evidence placing him at the scene of the killing was indicative of his guilt as a principal. Id. at 428-29.
The Louisiana Supreme Court disagreed, concluding that defendant's presence at and near the crime scene was not sufficient to support his conviction. In reversing the defendant's conviction, the court stated:
All persons "concerned in the commission of a crime" are principals, La.R.S. 14:24, but this rule has important qualifications. Only those persons who knowingly participate in the planning or execution of a crime are principals. State v. Knowles, 392 So.2d 651 (La.1980). Mere presence at the scene is therefore not enough to "concern" an individual in the crime. State v. Schwander, 345 So.2d 1173 (La.1977). Moreover, "an individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state." State v. Holmes, 388 So.2d 722, 726 (La.1980).
The facts of the instant case are distinguishable from the Pierre case. Defendant obtained a weapon upon hearing Hall's name mentioned and went searching for him. Upon finding Hall, the two engaged in a heated argument. Hall's friends halted the argument and attempted to leave the area. As their car passed by defendant and his companions, Harris began shooting. Two witnesses observed defendant join in the ambush of the vehicle. Johnson, one of defendant's cohorts, testified that the group was shooting at the car to kill Hall. One shot struck the passenger side of the vehicle where Hall was riding. None of the occupants of the car fired at defendant, as they were unarmed.
Defendant's actions constituted more than just his mere presence at the crime scene and were instead indicative of the requisite intent for a conviction of second degree murder and the responsive verdict of manslaughter. Defendant initiated the confrontation with Hall by seeking him out while armed with a gun. He was an knowing participant *560 in an intentional shooting to kill Hall which resulted in the death of a bystander.
Defendant's strongest point is that Beighley's testimony and ballistics report showed that the nine fired .9mm cartridge cases, the two fired .380 caliber cartridge cases, the bullet jacket, the bullet core, and the bullet, all recovered from the crime scene, could not be matched to the gun defendant was identified as using. However, this evidence does not directly contradict the testimony of Johnson and Brooks, who both identified defendant as a shooter. The jury, aware that Johnson was testifying pursuant to a plea agreement, assessed his credibility, and chose to accept his testimony. Such a finding is within the province of the jury. State v. Mitchell, supra.
The evidence in the instant case, when viewed in the light most favorable to the prosecution, was sufficient to convict defendant of the crime charged and thus, the responsive verdict of manslaughter. Accordingly, this assignment is without merit.

Assignment No. 2
The next assigned error concerns the trial court's denial of defendant's motion for continuance based upon the absence of a material witness, Lavelle Conway. On the day trial was to commence, defense counsel filed the motion pursuant to LSA-C.Cr.P. Art. 709 in which he alleged Conway's testimony was essential to the presentation of his defense based upon Det. Black's testimony at the preliminary examination:
The summary of Conway's interview by Det. Black is found at page 15, beginning at line 18, of the transcript of the preliminary examination and reads as follows:
Q. Did you interview a Lavelle Conway?
A. I did. Yes.
Q. Did Mr. Conway describe to you, in essence, a drive by shooting involving a white station wagon?
A. That is what he told me at the scene.
Q. He indicated to you that gunshots were fired from a white station wagon in the immediate vicinity of where this offense occurred and at the time approximately that this offense occurred?
A. According to him. Right.
Q. Did any other witness indicate that same information to you or to another officer?
A. No.
(R. pp. 115-16).
The motion further alleged that attempts at effecting service upon Conway at his last known address in Monroe were unsuccessful. The motion also stated that the investigator for the indigent defender board had made several attempts to locate Conway. However, defendant averred that Conway was in the Monroe area and that there was "distinct possibility that [he could] be located, interviewed and subpoenaed for appearance at [a] later trial setting."
Prior to jury selection, the trial court conducted a hearing on defendant's motion for continuance. Defense counsel reiterated the claims made in the motion for continuance and further stated that diligent effort had been made to locate Conway, including looking for him at his home address in Monroe and the area jails. The state agreed to stipulate as to the content of Conway's testimony, but was not willing to stipulate to the truth of it.
After deliberation, the trial judge denied the motion. The state indicated it was willing to allow the defense to question Detective Black about Conway's statement without raising a hearsay objection. Detective Black testified at trial; however, defense counsel did not question him as to Conway's statement.
Whether a refusal to grant a continuance is justified depends on the circumstances of the particular case, and a conviction will not be reversed absent a showing of specific prejudice caused by the denial of the continuance. State v. Clark, 437 So.2d 879 (La.App.2d Cir.), writ denied, 442 So.2d 460 (La.1983).
The requirements for a motion for continuance based upon the absence of a witness are set forth in LSA-C.Cr.P. Art. 709:

*561 A motion for a continuance based upon the absence of a witness must state:
(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;
(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
(3) Facts showing due diligence used in an effort to procure attendance of the witness.
The trial court did not err in this instance. Defendant filed his motion on the day trial was set to begin. He claimed that Conway could be located, but several previous attempts at doing so were unsuccessful. Further, defendant did not offer any evidence of Conway's whereabouts. Thus, defendant failed to show a probability that Conway would be available at some later date. There is no abuse of discretion in denying a motion for continuance where there are no facts produced at a hearing showing a probability that the missing witness will be available to testify at some later date. State v. Clark, supra.
In addition, the parties agreed to allow defense counsel leeway in questioning Det. Black about Conway's statement. However, defendant failed to make any inquiry about this "crucial" evidence during Det. Black's testimony. Defendant has failed to show that this ruling of the trial court was so prejudicial as to warrant a reversal of his conviction. LSA-C.Cr.P. Art. 921.
This assignment is without merit.

Assignment No. 3
In this assignment of error, defendant contends that there was agreement between defense counsel and the state that neither party would execute a "strike back" or peremptory challenge following selection of the last panel to be examined. Defendant submits that the state reneged on this agreement after he executed his last challenge, thereby resulting in prejudice to him.
The transcript of jury selection shows that defense counsel objected to the state's exercise of a peremptory challenge as to prospective juror James B. Smith. Counsel contended that there was a previous agreement before the court with the state as to the strike back procedure and that the state's use of the peremptory challenge violated this agreement.
Defense counsel then argued that defendant was prejudiced by such action for several reasons. First, counsel stated that the state got "a free bite at the apple" by having the opportunity to see who defendant was going to strike before reaching its own decision. Second, counsel submitted that prospective juror Smith could possibly be replaced by a juror who was less fair and impartial, and defendant would then have to excuse such a juror with a peremptory challenge or keep as a juror if no such challenges were left.[1]
In response, the state argued it had a right to strike prospective juror Smith pursuant to LSA-C.Cr.P. Art. 795.[2] Defense counsel recognized the provisions of this article, but claimed that the state had agreed to a more restrictive procedure.
The record indicates that following argument, the trial judge recessed the court to consider the objection. Upon reconvening, the judge held a sidebar conference off of the record. He then granted the state's challenge of prospective juror Smith.
The Louisiana Supreme Court addressed a similar argument to the one defendant raises in State v. Hopper, 251 La. 77, 203 So.2d 222 (1967), vacated on other grounds, 392 U.S. 658, 88 S.Ct. 2281, 20 L.Ed.2d 1347 (1968), aff'd and reinstated on remand, 253 La. 439, *562 218 So.2d 551, (1969), cert. denied, 396 U.S. 1012, 90 S.Ct. 545, 24 L.Ed.2d 504 (1970).
In Hopper, the defendant urged that the trial court erred in overruling his objection to the state's peremptory challenge of a prospective juror. Like the instant case, defendant argued that there was a prior agreement among defense counsel, the district attorney, and the court "that once a prospective juror had been accepted by both the state and defense counsel, there would be no further questioning of the prospective juror's qualifications...." Id. at 246. The court concluded that pursuant to LSA-R.S. 15:359 (now LSA-C.Cr.P. Art. 795), the trial judge properly permitted the challenge. Id. The court also noted that defendant was not prejudiced by the trial court's ruling. Id.
Further, LSA-C.Cr.P. Art. 795(B)(1) permits a party to "temporarily accept" a juror by declining to exercise the peremptory challenge when the prospective juror is first questioned and accepted, and then later exercise a peremptory challenge on that juror at any time prior to the swearing of the jury panel. State v. Banks, 590 So.2d 836 (La. App.2d Cir.1991).
There is no affirmative showing on the record that there was an agreement as to the "strike-back procedure" as defendant contends. Considering the absence of the sidebar conference from the transcript and the above-discussed cases, this assignment is without merit.
Assignment No. 4
With this assignment, defendant contends that the trial court erred in admitting photographs of the deceased victim's body. He argues that they were unduly gruesome and cumulative of other photographs which served to identify the victim.
Photographs are generally admissible if they illustrate any fact, shed light upon any issue in the case, or serve to describe the person, thing or place depicted. State v. Landry, 388 So.2d 699 (La.1980), cert. denied, 450 U.S. 968, 101 S.Ct. 1487, 67 L.Ed.2d 618 (1981); State v. Perow, 616 So.2d 1336 (La.App.2d Cir.), writ denied, 623 So.2d 1303 (La.1993).
The test for admissibility of gruesome photographs is whether their probative value outweighs any prejudicial effect which may result from the display to the jury. State v. Eaton, 524 So.2d 1194 (La.1988), cert. denied, 488 U.S. 1019, 109 S.Ct. 818, 102 L.Ed.2d 807, reh'g denied, 489 U.S. 1061, 109 S.Ct. 1332, 103 L.Ed.2d 600 (1989). Photographs of a victim's body depicting fatal wounds are generally relevant in proving corpus delicti; establishing the victim's identity and the location, severity, and number of wounds; and corroborating other evidence of the manner in which the death occurred. State v. Eaton, supra.
The trial court has great discretion in admitting photographs into evidence. Absent an abuse of that discretion, the ruling will not be disturbed. State v. Perow, supra.
John Pipes of the Monroe Police Department testified that he responded to the call reporting the shooting. His testimony included a description of the location of the victim's body inside of the apartment. Pipes identified three photographs (exhibits S-1J, S-1K, and S-1L) as depicting the entry and exit wounds on the victim's body. Following his testimony, the state sought to have the photographs admitted into evidence over defendant's objection. Defendant argued that only one of the three photographs was necessary to show the victim's wounds, and thus, the other two were cumulative and also prejudicial because of the amount of blood depicted in them. The trial judge admitted photographs S-1K and S-1L because they depicted the victim's wounds, but sustained defendant's objection as to photograph S-1J.
The photographs of the victim were not essential to the state's case. However, they were also not unduly prejudicial. One photograph showed the wound to the victim's lower shoulder. The other photograph was of the wound to the back of the victim's head. Neither photograph depicted a large amount of blood. The photographs did have some probative value, as they served to corroborate Pipes' testimony and illustrated for the jury the nature of the victim's wounds.
This assignment is without merit.

*563 Assignment No. 5

In this next assignment, defendant argues that the trial court erred in allowing Rokea Little to give hearsay testimony concerning a statement by Daron Hall prior to the shooting. Little testified that she was waiting in her car at the parking lot outside of the Cypress Manor Apartments when Hall returned to the car and excitedly said, "[L]et's go, let's go." Defendant objected to the testimony. The state argued that the statement was an "excited utterance."
An excited utterance is not excluded by the hearsay rule. It is defined as "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." LSA-C.E. Art. 803(2). This exception requires an event sufficiently startling to render a declarant's normal reflective thought process inoperative. Further, the statement of the declarant must have been a spontaneous reaction to the event and not the result of reflective thought. State v. Beason, 26,725 (La.App.2d Cir. 04/07/95), 653 So.2d 1274, writ denied, 95-1388 (La. 10/27/95), 661 So.2d 1359; State v. Reaves, 569 So.2d 650 (La.App.2d Cir.1990), writ denied, 576 So.2d 25 (La.1991).
In determining whether a statement was made under the stress of the startling event, the most important factor is time. Other factors include whether the statement is self-serving or in response to an inquiry, whether the statement is expanded beyond a description of events to include past or future facts, and whether the declarant performed tasks requiring reflective thought between the event and the statement. State v. Beason, supra; State v. Reaves, supra.
Little stated that Hall appeared to be excited when he returned to the car and instructed her to leave the area. Other testimony indicated that an argument had occurred between defendant and Hall, and that Hall's companions removed him from the scene to avoid further confrontation. Shortly thereafter, as Little was driving away from the apartment complex, shots were fired at the vehicle. Considering these factors, we conclude that Hall was under the stress of the excitement of his confrontation with defendant when he made the statement to Little.
Defendant also contends that the admission of this statement violated his right to be confronted with the witnesses against him. See U.S. CONST. amend. VI and LSA-Const. Art. 1 § 16. Incriminating statements admissible under an exception to the hearsay rule are inadmissible under the confrontation clause absent adequate indicia of reliability. Idaho v. Wright, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990); State v. Beason, supra. In a case where the evidence falls within a firmly rooted hearsay exception, such reliability can be inferred. Idaho v. Wright, supra; State v. Beason, supra. The "excited utterance" exception has been recognized as a firmly rooted exception to the hearsay rule. See White v. Illinois, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992). Thus, because the contested statement in the instant case was an excited utterance as discussed above, its admission into evidence was not a violation of the confrontation clause.
This assignment is without merit.

Assignment No. 6-9
These four assignments concern objections to the trial court's rulings on jury instructions.

Assignment No. 6
This assignment concerns the trial court's denial of defendant's request to include a special jury instruction on the law of negligent homicide:
Negligent homicide is the killing of a human being by criminal negligence.
Criminal negligence exists when there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful person under similar circumstances.
The Defendant is not charged with negligent homicide, nor is negligent homicide a responsive verdict in this prosecution. Therefore, if you as the jury conclude the *564 Defendant is only guilty of negligent homicide, he must be found not guilty.
The trial judge refused to give the special charge, concluding that the facts in the instant case were not consistent with the definition of negligent homicide.
LSA-C.Cr.P. Art. 807 provides in pertinent part:
The state and the defendant shall have the right before argument to submit to the court special written charges for the jury....
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
Pursuant to LSA-C.Cr.P. Art. 802, the trial court shall charge the jury as to the law applicable to the case. This article obligates the trial court to charge the jury, when properly requested, as to the law applicable to any theory of defense which the jurors could reasonably infer from the evidence. State v. Jackson, 450 So.2d 621 (La.1984); State v. Johnson, 438 So.2d 1091 (La.1983); State v. Marse, 365 So.2d 1319 (La.1978); State v. Williams, 606 So.2d 1387 (La.App.2d Cir.1992).
The trial court's refusal to give a requested special charge does not warrant reversal of a defendant's conviction unless it prejudices substantial rights of the accused. LSA-C.Cr.P. Art. 921; State v. Vergo, 594 So.2d 1360 (La.App.2d Cir.), writ denied, 598 So.2d 373 (La.1992).
LSA-C.Cr.P. Art. 814A(3) provides the responsive verdicts for second degree murder, the offense charged to defendant. Negligent homicide is not a responsive verdict to second degree murder. However, in cases involving various grades of murder, such as first degree murder, second degree murder, or manslaughter, when there is evidence from which the jury can infer that the defendant is guilty of negligent homicide, the trial court should charge the jury with the defendant's requested special charges on the law of negligent homicide. State v. Williams, supra; State v. Vergo, supra; State v. Gray, 430 So.2d 1251 (La.App. 1st Cir.1983).
Whether the trial court erred in refusing defendant's requested instruction as to negligent homicide depends upon whether the negligent homicide verdict is fairly supported by the record. State v. Vergo, supra. Such support is not found in the record of the instant case. Defendant asked for Johnson's gun upon hearing Hall's name mentioned. He then left the apartment and searched for Hall. Defendant was later observed arguing with Hall until Hall's friends persuaded him to leave. As Hall was driving away from the area, Harris encouraged the others to shoot at the vehicle and opened fire. Both Derrick Brooks and Vernon Johnson testified to seeing defendant firing his gun. This evidence was indicative of intentional criminal conduct resulting in criminal consequences, including the death of a bystander.
Defendant argues in brief that his conduct could be characterized as negligent homicide under the following scenario:
Acting under the belief that an attack from the vehicle in question was imminent, (self-defense) shots were fired in the general direction of the vehicle which was occupied. These shots were discharged in the "general direction" of the vehicle not as an attempt to kill anyone in the vehicle but to dissuade the threatened activities of the vehicle's occupants and provide cover for a means of escape. These actions were taken without regard for the safety of those persons present in the surrounding area, such as Donnell Jones. These shots were fired in the setting on an apartment complex with other individuals being present in the surrounding area who were not involved directly in the situation resulting in the shots being fired.
Such a scenario is not supported by the record, rather, it was argued by defense counsel. Argument alone is not sufficient to suggest that defendant was only guilty of negligent homicide. See State v. Vergo, supra. In addition, this argument fails to negate the testimony that defendant fired at *565 the vehicle upon Harris's prompting and after an argument with Hall. The evidence showed that a bullet struck the passenger side of Little's vehicle where Hall was riding. Further, Brooks testified that he observed defendant shooting along with the others in the group and that there was a large amount of gunfire.
Johnson testified on cross examination that he fired because he believed he was being fired upon from the occupants of the car. However, he recanted this testimony during re-direct examination. Further, Little testified that no one in her car was either armed with a gun or fired at the shooters.
The evidence in the record failed to support a negligent homicide verdict.
This assignment lacks merit.

Assignment No. 7
The next alleged error as to jury instructions concerns the trial court's explanation of the concept of reasonable doubt:
Reasonable doubt is doubt based on reason and common sense and is present when, after you have carefully considered all the evidence, you cannot say that you are firmly convinced of the truth of the charge. It is not a doubt concocted in your mind out of a feeling of sympathy for the accused or borne of a merciful inclination to permit the accused to escape the just penalty of the law.
Defendant argues that this portion of the instruction impermissibly urges each juror to discount those doubts which arise concerning the evidence or lack of evidence when considering the case and to instead consider any doubts as mere conjecture. Thus, he submits that the instruction undermines the presumption of innocence and violates due process.
At the hearing on the jury charges, the trial judge overruled defendant's objection to this portion of the instruction. The judge concluded the language was necessary to suggest to the jury that they should not formulate reasonable doubt out of sympathy and a desire to be merciful.
A jury charge must be considered as a whole, and particular expressions in a charge must be construed in context with the entire charge. A conviction will not be reversed on the ground of an erroneous jury charge unless the disputed portion, when considered in connection with the remainder of the charge, is erroneous and prejudicial. State v. Motton, 395 So.2d 1337 (La.), cert. denied sub nom. Motton v. Louisiana, 454 U.S. 850, 102 S.Ct. 289, 70 L.Ed.2d 139 (1981); State v. Matthews, 26,550 (La.App.2d Cir. 12/21/94), 649 So.2d 1022, writ denied, 95-0435 (La. 06/16/95), 655 So.2d 341. The trial court is permitted, but is not required, to define the term "reasonable doubt." LSA-C.Cr.P. Art. 804(A)(3).
We conclude that this portion of the reasonable doubt instruction did not infringe upon defendant's rights when viewed in the context of the entire charge. The other portions of the reasonable doubt instruction clearly defined this concept and expressly informed the jurors that they were to find defendant not guilty if there was a reasonable doubt as to his guilt. Further, the contested portion of the instruction did not serve to lessen the standard of proof required of the state, but instead explained to the jurors that their decision should not be based upon sympathetic feelings. This assignment is without merit.

Assignment No. 8
With this assignment, defendant argues that the trial court erred in including the state's request for a special jury instruction as to the "aggressor doctrine" in its charges to the jury regarding self-defense. The trial court gave the following instruction:
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.
In determining whether the defendant was the aggressor, you must consider the nature of the confrontation and whether the intended victim's actions, if any, were a reasonable response.
*566 Thus, if you find that the defendant was the aggressor or that he brought the difficulty, you must reject his clam of self-defense unless you find:
1. that he withdrew from the conflict, and;
2. that his withdrawal was in good faith, and;
3. that he withdrew in a manner that put his adversary on notice that he wished to withdraw and discontinue the conflict.
Although there is no unqualified duty to retreat, the possibility of escape is a factor in determining whether the defendant had a reasonable belief that it was necessary to kill in self-defense.
Defendant argues that an instruction as to the "aggressor doctrine" was inapplicable because when a defendant claims self-defense, the state has the burden of proving beyond a reasonable doubt that the homicide was not committed in such a manner. He contends that this instruction as to an essential element of the offense was misleading and confusing to the jury.
As previously noted, LSA-C.Cr.P. Art. 802 requires the trial court to charge the jury as to the law applicable to the case. Further, pursuant to LSA-C.Cr.P. Art. 807, the court shall give a requested special instruction if it does not require qualification, limitation, or explanation, and if it is wholly correct or pertinent.
The majority of the charge objected to regarding the aggressor doctrine came directly from LSA-R.S. 14:21. This statute provides that an aggressor cannot claim the right of self-defense. Defense counsel elicited testimony from Johnson on cross examination as to his belief that Hall and the other occupants of Little's car were firing as they drove away from the area. Thus, this portion of the charge was pertinent to this self-defense theory.
That portion of the instruction referring to the possibility of escape in determining whether the defendant had a reasonable belief that it was necessary to kill in self-defense was taken in part from this court's opinion in State v. Ruff, 504 So.2d 72 (La. App.2d Cir.), writ denied, 508 So.2d 64, 65 (La.1987). Further, this court has noted that almost identical language was necessary to "amplify and explain" a requested special charge on retreat. See State v. Sanders, 431 So.2d 833 (La.App. 2d Cir.), writ denied, 439 So.2d 1076 (La.1983). Finally, as pointed out in the Sanders opinion, this language was virtually identical to the charges quoted with approval by the Louisiana Supreme Court in State v. Tolbert, 390 So.2d 510 (La.1980).
We find that defendant was not prejudiced by this special charge. The charge, when viewed as a whole along with the remaining instructions given, adequately and correctly stated the law regarding self-defense and retreat.
This assignment is without merit.

Assignment No. 9
In this final assignment regarding jury charges, defendant argues that the trial court also erred in including the state's requested special jury instruction regarding the law of transferred intent:
When a person shoots at one person with the specific intent to kill or inflict great bodily harm and accidentally kills or inflicts great bodily harm upon another person, if the killing or inflicting of great bodily harm would have been unlawful against the first person, then it would be unlawful against the person actually shot, even though that person was not the intended victim.
In other words, if the State has proved beyond a reasonable doubt that the defendant had the specific intent to kill one person or to inflict great bodily harm upon that person but he accidentally killed or inflicted great bodily harm upon another person, intent is transferred from the intended victim to the actual victim.
Defendant argues that this instruction does not meet the requirements for special written charges as set forth in LSA-C.Cr.P. Art. 807, because it is not wholly correct and pertinent. He contends that the charge fails to explain the doctrine of self-defense in connection with the doctrine of transferred intent.
*567 The requested special charge as to transferred intent was supported by the evidence at trial that defendant and his cohorts shot at Hall but killed the victim, an innocent bystander. Further, the charge was correct in this instance and did not require further explanation. See State v. Cannon, 26,906 (La.App.2d Cir. 06/21/95), 658 So.2d 728.
This assignment is without merit.

Assignment No. 10
In his final assignment, defendant contends that the trial court erred in imposing an excessive sentence while failing to consider certain mitigating factors present in his case. Defendant filed a timely motion to reconsider sentence. We find the thirty-five year sentence at hard labor and with credit for time served was proper in this instance for the following reasons.
At sentencing, the trial judge began by reviewing the facts of the instant case. He then discussed the findings of the pre-sentence investigation report (PSI), noting that defendant was previously convicted of several traffic offenses, trespassing, disturbing the peace, and attempted possession of cocaine. The trial judge recognized defendant's position that he was not the person who fired the fatal shot and heard argument as to this claim and his self-defense claim. However, the judge stated that defendant was guilty as a principal and that both he and the jury disagreed with defendant's claim that he fired in self-defense.
As mitigating circumstances, the trial judge noted that defendant had only a seventh grade education, did not grow up in a stable family environment, and was receiving social security benefits because he had sickle cell anemia. Next, the judge cited aggravating factors present in defendant's case. He recognized that defendant's action of shooting at the car created a risk of death or great bodily harm to more than one person. The judge also stated that the use of such a large amount of weapons in the instant case, while not an aggravating factor, did distinguish it from the typical manslaughter offense.
The trial judge indicated that the sentencing guidelines placed defendant in grid cell 1-C for a recommended sentence range of 210-240 months of incarceration. He then noted defense counsel's claim that the correct grid cell was 1-D for a recommended sentence range of 150-180 months. However, the judge stated that either range was inappropriate in this instance.
The trial court judge noted that he had considered the sentencing guidelines and the mitigating and aggravating factors and had decided to depart from the guidelines pursuant to State v. Smith, 93-0402 (La. 07/05/94), 639 So.2d 237 (on rehearing). He sentenced defendant to thirty-five years at hard labor, with credit for time served. The judge stated that any lesser sentence would have been inappropriate.
Under the law in effect at the time of defendant's sentencing,[3] the trial judge was required to consider the guidelines, but had complete discretion to reject them and impose any sentence within the statutory range for the crime of conviction. State v. Smith, supra. The trial judge may disagree and choose not to follow the guidelines even in the absence of aggravating or mitigating circumstances. State v. Smith, supra; State v. Tumblin, 27,122 (La.App.2d Cir. 06/21/95), 658 So.2d 222; State v. Tuttle, 26,307 (La. App.2d Cir. 09/21/94), 643 So.2d 304. The trial judge need only state for the record the considerations taken into account and the factual basis for sentence. LSA-C.Cr.P. Art. 894.1C; State v. Smith, supra.
When the sentencing judge has considered the guidelines and imposed a sentence, adequately stating for the record the considerations taken into account and the factual basis for imposition of that sentence, an appellate court is limited to a review of the sentence imposed for constitutional excessiveness, without regard to whether the trial judge employed or deviated from the guidelines. State v. Smith, supra; State v. Walters, 26,647 (La.App.2d Cir. 12/07/94), 648 So.2d 7; State v. Farley, 26,377 (La.App.2d Cir. 09/21/94), 643 So.2d 300.
*568 In the instant case, the record reflects that the trial court judge considered the guidelines, stating for the record the considerations taken into account and the factual basis for the sentence. Thus, this court is limited to a review of defendant's sentence for constitutional excessiveness. State v. Smith, supra; State v. Walters, supra; State v. Farley, supra.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Richardson, 545 So.2d 714 (La.App. 2d Cir.1989).
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, we do not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La. 1983); State v. Thompson, 25,583 (La.App. 2d Cir. 01/19/94), 631 So.2d 555; State v. Madison, 535 So.2d 1024 (La.App. 2d Cir. 1988); State v. Hudgins, 519 So.2d 400 (La. App. 2d Cir.), writ denied, 521 So.2d 1143 (La.1988).
LSA-R.S. 14:31B provides that the offense of manslaughter is punishable by imprisonment at hard labor for not more than forty years. Defendant's thirty-five year sentence is on the upper end of this range.
The sentence was warranted in this instance. As the trial court noted, the evidence was sufficient to convict defendant of the charged offense of second degree murder, which carries a mandatory sentence of life imprisonment without benefit of parole, probation, or suspension of sentence. LSA-R.S. 14:30.1B. Thus, defendant benefitted from his conviction of the responsive verdict of manslaughter. Despite defendant's claim to the contrary, the judge properly considered as an aggravating factor the fact that defendant created a risk of death or great bodily harm to more than one person by shooting at a car with several passengers inside and with bystanders in the area. See State v. Freelon, 26,938 (La.App. 2d Cir. 05/10/95), 655 So.2d 687. Finally, the evidence showed that defendant was the aggressor who sought out Hall while brandishing an armed weapon. His total disregard for human life was evidence by his conduct of firing the weapon in the vicinity of a residential area. Considering all of these factors, the sentence imposed neither shocks the sense of justice nor constitutes an abuse of the trial court's great discretion in this area.
This assignment is without merit.

Error Patent Review
The record was reviewed for any errors patent, and none were found.

DECREE
For the foregoing reasons, the defendant's conviction and sentence for manslaughter are affirmed.
AFFIRMED.
NOTES
[1] The trial court minutes reflect that defendant exercised all twelve of his peremptory challenges.
[2] LSA-C.Cr.P. Art. 795 provides in pertinent part:

A. A juror shall not be challenged for cause after having been temporarily accepted pursuant to Paragraph A of Article 788 unless the challenging party shows that the cause was not known to him prior to that time.
B. (1) Peremptory challenges shall be exercised prior to the swearing of the jury panel.
[3] The sentencing guidelines were repealed by Acts 1995, No. 942, which became effective August 15, 1995. Defendant was sentenced on April 24, 1995.