913 So.2d 863 (2005)
STATE of Louisiana, Appellee
v.
Jessie MARTIN, Appellant.
Nos. 39,846-KA, 39,847-KA.
Court of Appeal of Louisiana, Second Circuit.
August 17, 2005.
*865 Carl E. Cooper, Louisiana Appellate Project, by Paula C. Marx, Lafayette, Peggy J. Sullivan, Monroe, for Appellant.
Jerry L. Jones, District Attorney, Charles Brumfield, E. Dion Young, Assistant District Attorneys, for Appellee.
Before WILLIAMS, GASKINS and MOORE, JJ.
MOORE, J.
The defendant, Jessie Martin, was convicted of the attempted manslaughter of Claudia Evans, who was his girlfriend. The state filed a multiple offender bill. At the hearing, Martin admitted to being a second felony offender without first being advised of his rights. The court sentenced him to 12 years at hard labor without benefits of probation or suspension of sentence. *866 For the reasons that follow, we affirm the defendant's conviction, but vacate and set aside the habitual offender adjudication and sentence, and remand the case to the trial court for further proceedings.

FACTS
On May 8, 2003, the defendant stabbed the victim once in the chest and six times in the back. Ms. Evans walked from the driveway into her mother's house and called 9-1-1. Catherine Johnson, the victim's mother, testified that the victim said the defendant had stabbed her. Officer Joe Reynolds testified that he arrived on the scene before the ambulance and used his fingers "in some of the holes [stab wounds] to control the bleeding." Dr. George Waterfallen testified that the stab wounds were "a little bit less than an inch" and "almost identical in size." He stated the wounds were probably made with "a straight-in type jabbing type motion."
Officer Reynolds testified that he asked the victim who had stabbed her, and she named the defendant as the culprit. Defense counsel objected based on hearsay. The state argued that the statement should be admitted under the excited utterance exception. The trial court overruled the objection after noting that "the call was close."
Officer Alan Campbell also testified that the victim said the defendant had stabbed her. No objection was made. He had assisted Detective Chuck Wilson and Corporal Chris Releford in arresting the defendant. Campbell testified that the officers pulled the defendant from a closet in which he was hiding.
Detective Wilson stated that the defendant was not wearing a shirt, was carrying a pocket knife and scabbard, and had possible bloodstains on his hands. He testified that he read the defendant his rights but did not attempt an interview that night because he "appeared very intoxicated." Wilson stated that the defendant had "a scratch on his neck."
In the defendant's taped statement, he claimed that he and the victim were approached by some people who asked the victim about drugs. He said the victim asked him for money, and he refused. They began to "tussle," and she cut his neck with "a razor." He said she took his wallet, and the other people ran. The victim continued to attack him, and he hit her with his knife. He told the police he cut her while trying to protect himself and "get her back." He did not know how many times he "hit" the victim with his knife or how badly she was hurt. The defendant told police that he used a smaller knife than the one found on him and that he threw that knife "in the woods" beside the victim's house. No other knife was found, however, nor were the box cutter that the defendant said that the victim used to cut him and the wallet he claimed she took from him. The fact that defendant stabbed the victim and the fact that the victim made a call earlier that day to say the defendant "had gotten into a fight" on King Street with someone were the only pieces of evidence to corroborate the defendant's statement.
The trial court held a hearing before allowing the state to introduce the taped 9-1-1 call. It ruled that there was "sufficient indicia of the reliability of the tape for it to be admitted." Barbara Watson, a dispatcher for the Bastrop Police Department, identified her voice on the tape as the person who received the call. After questioning the witness, defense counsel objected to the tape's admission into evidence. The trial court overruled the objection.
*867 The defense presented evidence that the defendant was unable to intentionally stab the victim because he is legally blind. To rebut this evidence, the state called two officers who responded to a "peeping tom" incident involving the defendant. Defense counsel objected, stating that the testimony was prejudicial. The trial court limited the scope of questioning to exclude the nature of the complaint the officers had responded to. In addition, the trial court gave a "cautionary instruction" to the jury. The trial court also specified that "no evidence that the defendant specifically recognized Campbell and called him Sergeant Campbell, called him by name" was admissible. Campbell and Reynolds testified that they responded to a call in August of 2002, saw the defendant, ordered him to halt, and chased him approximately 50 feet after he fled. Campbell stated that the defendant did not run into anything in his path. He said that the defendant "kept telling us that he was blind" as he was handcuffed. Reynolds stated that the defendant told them he was blind after he was handcuffed. He testified that the defendant did not "appear" blind when he was running.
Although he was charged with attempted second degree murder, the defendant was convicted of the responsive verdict of attempted manslaughter. His motions for new trial and post-judgment verdict of acquittal were both denied. He was initially sentenced to 18 years at hard labor with the last 10 years to be suspended. After the state filed an habitual offender bill of information,[1] defendant's previously imposed sentence was vacated. Without first being advised of his rights, the defendant admitted to being a second felony offender and was sentenced to serve 12 years at hard labor with credit for time served.

DISCUSSION
By his first assignment, defendant argues that the evidence at trial was not sufficient to support the conviction for attempted manslaughter in this matter. He states that no witness to the stabbing testified and that he could not have had the requisite specific intent because he was intoxicated at the time of the offense. He claims that intent to kill was never shown because "all of the wounds were superficial." The state argues that it proved the defendant "committed this act ... through ample physical evidence." Although it offered no substantiating proof, the state claims in brief that the victim did not testify because she "is deathly afraid of the defendant." It states that while the defendant may have been intoxicated, he had the presence of mind to dispose of the knife he claimed to have used and then hide immediately after the crime. The state argues that the defendant offered no proof of intoxication other than the testimony of state witnesses.
Manslaughter is a homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed. La. R.S. 14:31.
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his *868 object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. La. R.S. 14:27. Specific intent to kill is an essential element of crime of attempted second-degree murder, and also of the responsive crime of attempted manslaughter. State v. Hutcherson, 34,540 (La.App. 2 Cir. 4/4/01), 785 So.2d 140; State v. Sellen, 28,191 (La.App. 2 Cir. 6/26/96), 677 So.2d 578. Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10. Specific intent need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982); State v. Lemons, 38,269 (La.App. 2 Cir. 4/7/04), 870 So.2d 503, writ denied, 04-1288 (La.10/29/04), 885 So.2d 584. Specific intent is an ultimate legal conclusion to be resolved by the fact finder. Graham, supra.
The fact of an intoxicated or drugged condition of the offender at the time of the commission of the crime is immaterial, except where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime. In that event, this fact constitutes a defense to a prosecution for that crime. La. R.S. 14:15(2). If the defendant proves that he was intoxicated at the time of the offense, the state has the burden of negating that defense by proof beyond a reasonable doubt. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994); State v. Jordan, 31,568 (La. App. 2 Cir. 2/24/99), 728 So.2d 954, writ denied, 99-0893 (La.10/8/99), 750 So.2d 177.
The proper standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App. 2 Cir. 4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App. 2 Cir. 9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2 Cir.1984). A reviewing court accords great deference to a judge or jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2 Cir. 8/30/02), 827 So.2d 508, writ denied, State ex rel. Gilliam v. State, 02-3090 *869 (La.11/14/03), 858 So.2d 422. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App. 2 Cir. 5/8/96), 674 So.2d 1018, writs denied, 96-1459 (La.11/15/96), 682 So.2d 760, 98-0282 (La.6/26/98), 719 So.2d 1048.
In this case, the defendant stabbed the victim with a knife once in the chest, and he stabbed her in the back six times. Johnson testified that she found her daughter sitting at the table and calling 9-1-1 while "hollering." She stated that "blood was everywhere" and that the victim said the defendant had stabbed her. Reynolds and Campbell testified that the victim told them the defendant stabbed her. On the 9-1-1 tape, a voice is heard calling for her mother and stating that the defendant has stabbed her. Exhibit S-1. The victim did not testify at trial.
The defendant was found hiding shirtless with a knife and possible bloodstains on his hands. He admitted to "hitting" the victim with another knife in self-defense after she cut him and took his wallet. Police photographed a scratch on the defendant's neck. The other knife, the box cutter he said the victim used to cut him, and the wallet he said was taken were not found.
The evidence, when viewed in a light most favorable to the prosecution, is sufficient to support the verdict of attempted manslaughter. Although the defendant argues that the wounds were "superficial," the attending physician's testimony and evidence showing massive blood loss suggests that the wounds were serious. That the victim did not testify at trial is troublesome; however, considering the other witnesses' testimony, the taped 9-1-1 call, the depth and location of the wounds in the victim's back (indicating the likelihood that the victim was not attacking the defendant), and the defendant's statement, the totality of the evidence is sufficient to prove the defendant stabbed the victim multiple times and had specific intent to kill or to inflict great bodily harm. The jury could have reasonably believed that the offense was committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection because the defendant testified that the victim had stolen his wallet for drug money and cut his neck.
While the defendant argued at trial that his blindness negated any specific intent and that he struck the victim in self-defense, he claims only intoxication as a defense in his brief. Evidence supporting the defendant's intoxication can be summarized as follows:
Catherine Johnson testified that she saw the defendant and the victim outside drinking together for approximately six hours before the incident. She said that the defendant had been drinking gin. Wilson testified that he attempted no interview on the night of the defendant's arrest because he "appeared very intoxicated."
However, the defense presented no evidence of intoxication. There was no testimony as to the amount of alcohol consumed, the exact time it was consumed, or the effects of consuming the unknown amount in that period of time. The defendant ran to his aunt's house after the incident and hid in a closet. He told the police he threw the knife he used to stab the victim in the woods. We conclude that the evidence as a whole does not indicate the defendant was so intoxicated that it would have been impossible for him to form the requisite specific intent to kill when he stabbed the victim repeatedly with a knife. See also State v. Lott, 574 *870 So.2d 417 (La.App. 2 Cir.1991), writ denied, 580 So.2d 666 (La.1991), where this court found a defendant guilty of attempted second degree murder when he claimed a defense of intoxication on appeal but failed to present evidence of that defense at trial. This assignment is without merit.
By assignments two and three, the defendant contends that the trial court erred in allowing the introduction of the 9-1-1 tape, and in allowing the introduction of statements attributed to Claudia Evans to Officer Reynolds after the stabbing. Specifically, defendant contends that the 9-1-1 tape was not properly authenticated and by admitting the hearsay statement made by the victim to Officer Reynolds, the trial court violated his constitutional right to "confront and cross-examine the witnesses against him." He argues that the admission of the tape and statement is "inexcusable and requires reversal."
In response to defendant's argument, the state contends that the tape was authenticated at trial by the dispatcher's testimony, and the victim's statement to Officer Reynolds was an excited utterance, and, therefore, an exception to the hearsay rule. The state argues the statement was admissible "regardless of the availability of the declarant/victim."
To be admissible at trial, demonstrative evidence must first be authenticated. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. La. C.E. art. 901(A.). The law further provides the following as an example of authentication or identification conforming with the requirements: Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker. La. C.E. art. 901(B.)(5).
The defense contends that there was no statement on the 9-1-1 tape "from the alleged victim that identifies herself." The state claimed that the tape provided adequate identification, and that it was "offered to show that" the victim "called 9-1-1 and an ambulance was dispatched out there and this incident actually happened." The court ruled that the tape was admissible based upon the "content of the tape along with the testimony already given by the mother" of the victim.
Dispatcher Watson identified her own voice as the person who took the 9-1-1 call and dispatched an ambulance to the address. The tape's authenticity is supported by Catherine Johnson's testimony that her daughter called 9-1-1 while "sitting there hollering." The defense made no objections or arguments about chain of custody. The tape's admission into evidence does not appear to even approach possible reversible error. See also State v. Taylor, 04-90 (La.App. 5 Cir. 5/26/04), 875 So.2d 962, writ denied, 04-1649 (La.11/19/04), 888 So.2d 193, which determined authentication of a 9-1-1 tape through a witness's testimony claiming to be one of the parties heard on the recording. Accordingly, this assignment is without merit.
Regarding the victim's statement to police officers naming the defendant as the culprit, hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801(C.). An excited utterance is a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the *871 event or condition and is not excluded by the hearsay rule, even though the declarant is available as a witness. La. C.E. art. 803(2). This exception requires an occurrence or event sufficiently startling to render the declarant's normal reflective thought process inoperative. State v. Reaves, 569 So.2d 650 (La.App. 2 Cir. 1990), writ denied, 576 So.2d 25 (La.1991). Furthermore, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought. State v. Henderson, 362 So.2d 1358 (La.1978).
In determining whether the declarant was under stress of an excited event, the time span between the event and the statement is considered the most important factor. The trial court must determine whether the interval between the event and the statement was of sufficient duration to permit a subsidence of emotional upset and a restoration of a reflective thought process. State v. Jasper, 28,187 (La.App. 2 Cir. 6/26/96), 677 So.2d 553, 563, writ denied, 96-1897 (La.2/21/97), 688 So.2d 521. Additional factors that may indicate that a statement was the result of a reflective thought are evidence that the statement was self-serving or made in response to an inquiry, or expansion of the excited utterance beyond a description of the event and into past or future facts, and proof that, between the event and the statement, the declarant performed tasks that required a reflective thought process. However these factors do not automatically justify exclusion, Henderson, supra; Jasper, supra. We also note that the Louisiana Supreme Court has long held that the admission of even hearsay testimony is harmless error where the effect is merely cumulative or corroborative of other testimony adduced at trial. State v. Johnson, 389 So.2d 1302 (La.1980); State v. McIntyre, 381 So.2d 408, 411 (La.1980), cert. denied, McIntyre v. Louisiana, 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 90 (1980).
In the instant case, Officer Reynolds arrived at the scene when the victim was bleeding profusely from seven stab wounds. He testified that he asked the victim who had stabbed her, and she named the defendant. At trial, after a bench conference, the trial court overruled the hearsay objection by defense counsel. The trial court later explained that the statement had been an excited utterance and therefore admissible. Defense counsel did not object to similar statements made by Campbell or Johnson.
We conclude that having been stabbed seven times was an event so startling and upsetting that it deprived the victim of her reflective thought process. Reynolds further testified that the victim "was having trouble breathing" and was "real sweaty" when, perhaps worried that she may not survive, he asked her who had stabbed her. She was still bleeding profusely when she respondedso much so that Officer Reynolds attempted to stop the bleeding by putting his fingers in the stab wounds. The ambulance had not yet arrived on the scene and there was not a lengthy interval between the stabbing and her statements. The victim was obviously still upset. See also State v. Michael, 39,439 (La.App. 2 Cir. 1/7/05), 891 So.2d 109, writ denied, 05-0354 (La.6/17/05), 904 So.2d 681, where this court held that a victim's statements to police after being transported to the hospital were admissible in a probation revocation hearing. There is no evidence to suggest that there was time to permit restoration of reflective thought. The statement was in response to an inquiry by Reynolds; however, that fact does not automatically justify exclusion. In Henderson, supra, the victim's statements in response to a school administrator's *872 inquiry were admitted as an excited utterance exception. We therefore conclude that the victim's statement to Reynolds falls under the excited utterance exception to the hearsay rule. Even if the statement had been admitted in error, it would have been harmless error because it merely supported the defendant's own statements and the testimony of Johnson and Campbell. Therefore, this assignment is without merit.
By his fourth assignment of error, defendant contends the trial court erred by allowing evidence of other crimes or bad acts admitted as a part of the state's case in rebuttal. The defendant argues that the state gave no notice of intent to use the evidence presented on rebuttal and that the state failed to prove by clear and convincing evidence that he was guilty of this crime or bad act. He alleges that the state was aware of his "contention of blindness" and that the defense argument was actually contained in a recorded statement taken by a state agent. He complains that the state did not take the opportunity to adequately question defense witnesses about his condition. Finally, he argues that his glaucoma is a degenerative condition, and the degree of his blindness could have worsened during the seven months between the act discussed during rebuttal and the stabbing.
The state argues that "[t]here was no mention of any crime or wrong committed by the defendant in the [s]tate's case on rebuttal." The rebuttal testimony was offered only to show that "the defendant could see well enough to run prior to the present charge." The state argues that the defendant raised the issue at trial; therefore, the rebuttal testimony was used to disprove the defense of blindness. It contends that no testimony was offered at trial as to the defendant's present condition.
Generally, evidence of other crimes committed by the defendant is inadmissible due to the "substantial risk of grave prejudice to the defendant." State v. Prieur, 277 So.2d 126, 130 (La.1973). For evidence of other crimes to be admissible, the state must prove with clear and convincing evidence that the other acts or crimes occurred and were committed by the defendant, demonstrate that the other acts satisfy one of the requirements of La. C.E. art. 404(B.)(1) (motive, intent, knowledge, identity, absence of mistake or accident), and show that the probative value of the evidence outweighs its prejudicial effect. State v. Jackson, 625 So.2d 146 (La.1993). A trial court's ruling on the admissibility of evidence of other crimes will not be overturned absent an abuse of discretion. State v. Blackwell, 30,281 (La. App. 2 Cir. 11/10/97), 701 So.2d 1389, writ denied, 97-3073 (La.2/13/98), 709 So.2d 755.
Rebuttal evidence is that which explains, repels, disproves or counteracts. State v. Tilley, 99-0569 (La.7/6/00), 767 So.2d 6, cert. denied, 532 U.S. 959, 121 S.Ct. 1488, 149 L.Ed.2d 375 (2001); State v. Huizar, 414 So.2d 741, 751 (1982). The determination of whether evidence is rebuttal evidence and hence admissible is an issue which is addressed to the sound discretion of the trial court. Id.
Evidence of other crimes, wrongs, or acts may be admissible for purposes other than to prove the character of a person in order to show that he acted in conformity therewith provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of *873 the act or transaction that is the subject of the present proceeding. La. C.E. art. 404(B.)(1). The Louisiana Supreme Court has held that when evidence of other acts of misconduct becomes relevant after the defendant presents his case, and would be admissible on rebuttal except for the fact that advance notice of intention to adduce evidence of other offenses had not been given to the defendant, the conviction will not be reversed for the failure to comply with the requirements of Prieur. State v. Banks, 307 So.2d 594 (La.1975).
The state provided notice of intent to use other crimes evidence; however, it only cited arrests for simple battery. In its opening statement, the defense mentioned the defendant's vision impairment as a possible defense. The defense called Sara Pendegrass to testify about the defendant's glaucoma and that he is legally blind. She testified that she had seen no problems with the defendant's walking but that he had problems reading and writing due to the condition. The defense presumably could have called another witness to corroborate the claim of blindness but did not do so.
On rebuttal, the state called Reynolds and Campbell to testify about their observations of the defendant's ability to run without apparent vision problems approximately seven months before the stabbing. The trial court held a hearing to decide the admissibility of the officers' testimony. Campbell testified at the hearing that he responded to a "Peeping Tom" complaint from Catherine Johnson in August of 2002, and found the defendant "peeking out between two houses." Campbell and Reynolds ordered the defendant to stop. The defendant fled, and the officers chased, caught, and handcuffed him. He told the officers he was blind. However, Campbell testified that the defendant ran without any problems. Both counsel stipulated that Reynolds would "say essentially the same thing." The defendant was never arrested or convicted of a charge based on that complaint.
The trial court allowed the state to call officers Reynolds and Campbell on rebuttal; however, the officers were instructed to say only that they were responding to a complaint without specifying what it had been about or the person initiating the complaint. Campbell was instructed not to testify that the defendant recognized him. The jury was given a cautionary instruction "indicating that this testimony is to be taken only for purpose of making a judgment in their minds as to whether or not that this evidence indicates or does not indicate whether or not the defendant is able to see." The defense counsel objected to the ruling, arguing that the testimony was prejudicial.
The state could have found less incriminating and prejudicial witnesses to call regarding the defendant's vision; however, the argument that family members would have been partial to the defendant is compelling. The officers' testimony did not name the nature of the complaint, but the fact that the defendant fled after being ordered to stop by the police and was then handcuffed upon capture is prejudicial. The probative value of the testimony is to show that the defendant previously had adequate vision to run from the police for "about the length of the courtroom" and therefore was probably able to see sufficiently to know what was happening during the stabbing. The trial court determined that the probative value of the evidence outweighed the prejudicial. While the testimony was unfavorable to the defendant and an admission of a prior act, the trial court's ruling to admit the evidence does not appear to be in error or an abuse of its vast discretion. This assignment is without merit.

*874 Error Patent

Our review of the record reveals that the trial court failed to advise the defendant of his rights before accepting his admission that he is a second felony offender (39,847-KA). Before accepting a defendant's admission that he is a multiple offender, the trial judge must specifically advise the defendant of his right to a formal hearing, his right to require the state to prove his identity as a multiple offender, and his right to remain silent. La. R.S. 15:529.1(D). A trial court's failure to properly advise a defendant of his rights under the habitual offender law constitutes patent error on the face of the record and requires that the habitual offender's adjudication and sentence be vacated. State v. Mason, 37,486 (La.App. 2 Cir. 12/10/03), 862 So.2d 1077. The habitual offender adjudication and sentence must be vacated and the matter remanded to the trial court for further proceedings.
Assignments of error five and six relate to alleged sentencing errors. Because we have determined that the habitual offender adjudication and sentence must be vacated for error patent and the case remanded to trial court for further proceedings, these assignments are now moot.

CONCLUSION
The evidence, when viewed in a light most favorable to the prosecution, was sufficient to support the guilty verdict of attempted manslaughter. The trial court did not err in admitting the 9-1-1 tape based upon evidence of authenticity, the victim's statements to Reynolds which are excluded from hearsay testimony by the excited utterance exception, or the testimony offered by officers to rebut the defense of blindness. For these reasons, the conviction is affirmed. However, the defendant admitted to being a second felony offender without first being advised of his rights. Accordingly, the habitual offender adjudication and sentence are vacated, and the matter remanded to the trial court for further proceedings.
CONVICTION AFFIRMED; HABITUAL OFFENDER ADJUDICATION AND SENTENCE VACATED; REMANDED.
NOTES
[1] See No. 39,847-KA.