976 So.2d 279 (2008)
STATE of Louisiana, Appellee
v.
Demarcus Deandre JACKSON, Appellant.
No. 42,960-KA.
Court of Appeal of Louisiana, Second Circuit.
February 13, 2008.
*280 James E. Beal, Louisiana Appellate Project, Jonesboro, for Appellant.
Paul J. Carmouche, District Attorney, J. Dhu Thompson, Sarah S. Midboe, John Ford McWilliams, Jr., Assistant District Attorneys, for Appellee.
Before BROWN, GASKINS and CARAWAY, JJ.
GASKINS, J.
The defendant, Demarcus Deandre Jackson, was convicted of attempted manslaughter and illegal use of a weapon while committing a crime of violence. He was sentenced to 14 years at hard labor on the attempted manslaughter conviction and 14 years on the conviction for illegal use of a weapon while committing a crime of violence. The latter sentence was ordered to be served without the benefit of parole, probation or suspension of sentence. Both sentences are to run concurrently. The defendant appealed, claiming insufficiency of the evidence to convict him of illegal use of a weapon while committing a crime of violence. He also argues that his sentences are excessive. For the following reasons, the defendant's convictions and sentences are affirmed.

*281 FACTS
On the morning of March 29, 2006, the defendant and his girlfriend, Lajoy Livingston, had an altercation at her home. The night before, Lajoy ended her relationship with the defendant. On the morning of the offenses, the defendant showed up at Lajoy's home where the two began to argue. The altercation continued as Lajoy left her home to catch the school bus. The argument ended when the defendant pulled a .40-caliber handgun and began shooting in Lajoy's direction. Although Lajoy was able to make it into her home unharmed, one of the shots struck the back of a passing school bus and injured a child passenger.
The defendant left the scene, but was identified by the Livingstons as the shooter. He was arrested and charged with one count of attempted second degree murder, a violation of La. R.S. 14:30.1 and 14:27, and one count of illegal use of a weapon while committing a crime of violence, a violation of La. R.S. 14:94. The crime of violence was aggravated criminal damage to property. See La. R.S. 14:2(19) and La. R.S. 14:55.
The defendant was tried by a jury. At trial, Janice Livingston, Lajoy's mother, testified that the defendant arrived at her home on the morning of March 29, 2006, to walk her daughter to the bus stop. Shortly after the defendant and Lajoy left for the bus stop, they returned with Lajoy complaining that the defendant had taken her cell phone. Ms. Livingston told the defendant to return the cell phone, which he did. As the defendant and the victim walked back toward the bus stop, Ms. Livingston saw the defendant yank Lajoy's hair piece off her head. Ms. Livingston told the defendant to "leave that girl alone," and then went back inside her house. Shortly thereafter, she heard a gunshot and ran outside to see what was happening. She saw Lajoy heading back toward the house and the defendant firing a handgun in Lajoy's direction. At the state's request, Ms. Livingston stepped down from the witness stand and demonstrated the manner in which the defendant was aiming the gun at Lajoy. She also testified that she felt one of the bullets pass by her abdominal area, causing her to take cover by falling to the ground.
At the same time as the events described by Ms. Livingston, Joanne McMillan, a Caddo Parish school bus driver, was turning off Baxter Street onto Bellar Street. The children on her bus advised her that a child was running to catch the bus. Ms. McMillan stopped the bus in the approximate vicinity of Ms. Livingston's home to wait for the child. Ms. McMillan testified that she saw Lajoy and the defendant coming out of the house and saw Lajoy throw a DVD or VCR player on the ground, pick it up and throw it down again. She also saw the defendant take an object out of his pocket. She then heard two shots, the second of which hit the bus. She asked the children if they had thrown something and the children responded that the noise was the defendant firing a gun. Ms. McMillan looked in her side view mirror and saw the defendant holding a gun and pointing it in the same direction in which her bus was headed. The children in the bus were screaming and yelling that one of the students sitting in the back of the bus, Joshua Pickett, had been shot. She told the children to get down and she drove the bus out of the area while she bent over the steering wheel. Ms. McMillan made a left turn onto Cleveland Street and stopped the bus. She went to the back of the bus and found Joshua crying and bleeding from behind his ear. She picked him up, took him to the front of the bus, and held him in her lap. She briefly exited the bus to flag down help and then *282 returned to wait for law enforcement and an ambulance to arrive. On cross-examination, Ms. McMillan testified that the defendant was "real close" to the bus when the shots were fired.
Corporal Amy Muller of the Shreveport Police Department testified that she was called to the scene. A member of the crime scene investigation unit, she documented the damage sustained by the school bus and looked for evidence of gunfire. She took several photographs of the bus which were introduced into evidence. The photographs depict interior and exterior views of a hole in the driver's side rear window of the bus which is surrounded by radial and concentric fractures extending to the outermost edges where the window is set into the bus's frame. The photographs also show a dent on the inside wall of the bus just above the driver's side of the front windshield which Corporal Muller believed to be damage caused by a projectile. Two of the pictures exhibit a console just to the left of and slightly behind the driver's seat. Just below the console, sitting on a pile of papers, is a projectile. In addition to the projectile recovered on the bus, Officer Brad Sotak of the Shreveport Police Department testified that he recovered three shell casings in the area of the intersection between Baxter and Bellar.
Joshua Pickett, who was nine years old at trial, testified that on the day in question he was sitting on the last seat of the bus, just in front of the window which was struck by the bullet. Prior to boarding the bus on Baxter Street, he said he witnessed a boy and a girl arguing and he saw the boy pulling the girl's hair. Once on the bus, he saw a figure behind the bus when the gunshots started. Joshua testified that one of the bullets hit the window behind him, sending glass into the back of his neck and causing him to bleed. He remembered being taken to the hospital by ambulance where he was diagnosed with superficial abrasions along the neck, near major arteries. The wounds were treated with antiseptic and dressed. Joshua was released from the hospital.
The lead investigator in the case, Detective Jeff Brown, testified that pursuant to his interviews of Janice and Lajoy Livingston, a photo line-up, including a picture of the defendant, was conducted. Janice and Lajoy Livingston identified the defendant as the perpetrator. Detective Brown obtained an arrest warrant for the defendant and disseminated the information to officers working patrol and to the media.
The defendant turned himself in around 6:30 p.m. that evening and was placed under arrest. After being advised of his rights under Miranda, the defendant gave a tape-recorded statement which was played for the jury. In it, the defendant admitted to an altercation earlier that morning with Lajoy. The altercation ended when he fired a .40-caliber handgun three times; at least the last shot was fired "toward they [sic] way and it hit the bus." When asked why he shot at Lajoy, he stated that he was "crazy about" her and "guessed" he was trying to scare her. After initially stating that he had fired in Lajoy's direction, he stated that he was not aiming at Lajoy, but at a gate next door to Lajoy's home or at the yard. He stated that after firing the last shot, he ran away and stored the gun in an abandoned house. He claimed the gun was not there when he returned to retrieve it.
At trial, the defendant testified on his own behalf. He stated that when he started shooting, he was "full of rage" and did not intend to shoot anybody. He testified that the bus was "all the way past their house like about to turn on Cleveland." He said that he was aiming his gun in the air as he fired all three shots. On cross-examination *283 he admitted that it was impossible for him to have struck the bus if he was aiming upward on all three shots as he indicated in court. Despite admitting that he was the only person shooting a gun in the immediate vicinity that morning, he had no explanation for how the bus got shot. He retracted the portions of his taped statement where he asserted that he aimed at the gate and at Lajoy's yard, claiming that his comments were the product of the pressure put on him by the interrogating officer.
Rather than convicting the defendant of attempted second degree murder, the jury returned a responsive verdict of guilty of attempted manslaughter. The trial court sentenced him to serve 14 years at hard labor for this offense. The defendant was also found guilty as charged of illegal use of a weapon while committing a crime of violence. The trial court sentenced the defendant to 14 years' imprisonment at hard labor without benefit of probation, parole, or suspension of sentence for this offense and ordered that both sentences to be served concurrently. The defendant's post-trial motions in arrest of judgment and for reconsideration of sentence were denied.

SUFFICIENCY OF THE EVIDENCE
The defendant argues that the evidence was insufficient to support convictions for both attempted manslaughter and illegal use of a weapon while committing a crime of violence. The defendant claims that the attempted manslaughter conviction required a finding that the defendant had the specific intent to kill Lajoy Livingston when he fired the handgun. That finding, the defendant argues, precludes a determination by the jury that the defendant had the general intent to damage the bus, a necessary element to convict the defendant of illegal use of a weapon while committing aggravated criminal damage to property. This argument is without merit.

Legal Principles
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, XXXX-XXXX (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Murray, 36,137 (La.App. 2d Cir.8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/5/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.2/22/06), 922 So.2d 517.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, XXXX-XXXX (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,188 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422. When there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App. 2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
*284 The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Owens, 30,903 (La. App. 2d Cir.9/25/98), 719 So.2d 610, writ denied, 1998-2723 (La.2/5/99), 737 So.2d 747.
To support a conviction for attempted manslaughter, the state must prove the defendant specifically intended to kill the victim and committed an overt act in furtherance of that goal. State v. Mitchell, 39,305 (La.App. 2d Cir.2/17/05), 894 So.2d 1240, writ denied, XXXX-XXXX (La.6/3/05), 903 So.2d 457. Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982); State v. Martin, 39,846 (La. App. 2d Cir.8/17/05), 913 So.2d 863, writ denied, XXXX-XXXX (La.6/14/06), 929 So.2d 1267. The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982).
A violation of La. R.S. 14:94(F) occurs when the defendant intentionally, or through criminal negligence, discharges a firearm, when it is foreseeable that it may result in death or great bodily harm to a human being, and the defendant did so while committing, attempting to commit, conspiring to commit or otherwise trying to get someone else to commit a crime of violence. The crime of violence in the instant case is aggravated criminal damage to property, which is the intentional damaging of any structure, watercraft, or movable, wherein it is foreseeable that human life might be endangered, by any means other than fire or explosion. La. R.S. 14:55. The crime of aggravated criminal damage to property requires proof of general criminal intent. State v. Brumfield, 329 So.2d 181 (La.1976). General criminal intent is present when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10. Aggravated criminal damage to property is committed upon proof that the accused voluntarily did the act. Brumfield, supra.

Discussion
The defendant argues that his two convictions are mutually inconsistent because he could not simultaneously have had the requisite specific intent to kill Lajoy Livingston and the requisite general intent to commit aggravated criminal damage to property. The intent requirements regarding the two separate convictions, as well as the defendant's actions on the morning in question, do not support this argument.
The evidence in this case shows that on the morning of March 29, 2006, the defendant and victim were walking on Bellar Street while engaged in an argument. The defendant became enraged and pulled a .40-caliber handgun and began shooting. At least one witness, the victim's mother, saw the defendant pointing the gun at the *285 victim and firing. The defendant, by his own admission, fired at least three times. Contemporaneous to these events, a school bus loaded with children passed the defendant and victim as it traveled down Bellar Street in the same direction in which the defendant was firing. One of the bullets from the defendant's gun entered the rear window of the bus, traveled the length of the bus and struck the interior wall of the bus just above the driver's seat. A child sitting on the rear seat of the bus was hit by flying glass when a window was shattered by the bullet. Because of the bleeding, he was taken by ambulance to the hospital where it was determined that he had suffered superficial abrasions to the neck.
Specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person. State v. Robinson, XXXX-XXXX (La.4/14/04), 874 So.2d 66, cert. denied, 543 U.S. 1023, 125 S.Ct. 658, 160 L.Ed.2d 499 (2004). The only evidence contradicting the allegation that the defendant aimed his gun at Lajoy and fired repeatedly was the defendant's own trial testimony that he was aiming upward while firing his gun. That testimony was contradicted by the defendant's taped statement to law enforcement and was inconsistent with the apparent trajectory of the bullet which struck the school bus. The evidence supports a finding that defendant specifically intended to kill Lajoy beyond a reasonable doubt.
After the jury found that he had specific intent to kill Lajoy Livingston, the defendant argues that the jury could not have found the requisite general intent to convict him of illegal use of a weapon while committing aggravated criminal damage to property. To find the defendant guilty on this count, the jury was required to find that the defendant intentionally discharged his firearm under circumstances indicating that he, in the ordinary course of human experience, must have known that it was reasonably certain that one of the bullets would strike the bus, and that it was foreseeable that his action would endanger the lives of the children aboard. Because the crime of aggravated criminal damage to property is a general intent crime, the jury was not required to find that the defendant actively desired to hit the bus, only that hitting the bus was a reasonably certain outcome of his intentional discharge of the handgun.
Evidence was adduced at trial that, at the time of the shooting, the school bus was stopped in the middle of Bellar Street, just past Janice and Lajoy Livingston's house. The defendant was facing in that direction when he fired his handgun. The pictures of the school bus indicate that its color was the customary conspicuous yellow usually associated with school buses and it was clearly visible to the defendant who was standing less than a block away when he fired his handgun in that direction. The evidence supports a finding that the defendant discharged a firearm in such a manner that was reasonably certain to cause damage to the school bus and to endanger human life.
The jury's findings of guilt on these two offenses are not mutually inconsistent. Despite the assertions of the defendant, his actions in engaging in a course of conduct with specific intent (actively desiring a certain outcome) do not absolve him from other consequences which, in the ordinary course of human experience, he should have known were reasonably certain to result from his conduct.[1] As such, *286 viewing the evidence in the light most favorable to the state, a reasonable juror could have concluded beyond a reasonable doubt that the defendant had both the specific intent required to support the attempted manslaughter conviction and the general intent required to support the conviction of illegal use of a weapon while committing a crime of violence.

EXCESSIVE SENTENCE
The defendant argues that the sentences imposed by the trial court are excessive considering the defendant's age and lack of a criminal record. This argument is without merit.

Legal Principles
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App. 2d Cir.6/24/98), 715 So.2d 641. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App. 2d Cir.4/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.6/24/05), 904 So.2d 728. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. There is no requirement that specific matters be given any particular weight at sentencing. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Hampton, 38,017 (La.App. 2d Cir.1/28/04), 865 So.2d 284, writs denied, XXXX-XXXX (La.3/11/05), 896 So.2d 57, 2004-2380 (La.6/3/05), 903 So.2d 452.
Second, a sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, XXXX-XXXX (La.1/15/02), 805 So.2d 166.
The trial judge is given wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Williams, XXXX-XXXX (La.12/13/04), 893 So.2d 7; State v. Thompson, XXXX-XXXX (La.4/9/03), 842 So.2d 330; State v. Hardy, 39,233 (La.App. 2d Cir.1/26/05), 892 So.2d 710. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Cook, 95-2784 (La.5/31/96), 674 So.2d 957, cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*287 Discussion
The defendant argues that the mitigating factors regarding his youth and lack of criminal history render the sentences imposed excessive. In imposing sentence, the trial court noted both of the mitigating factors relied on by the defendant. The trial court also noted several aggravating factors including that the defendant used a dangerous weapon in committing the offense, that he endangered human life in doing so, and that he injured an innocent bystander. After weighing these factors, the trial court concluded that any lesser sentences than the ones imposed would deprecate the seriousness of the offenses.
Despite the mitigating factors present in this case, the record supports the trial court's conclusion that lesser sentences would deprecate the seriousness of the crimes committed by the defendant. The defendant's disregard for his intended victim, as well as innocent bystanders, evidences that he is a serious threat to public safety. While the defendant's age and lack of criminality weigh in his favor, it is difficult to disagree with the trial court that the seriousness of the crime he committed outweighs the mitigating factors. As discussed earlier, the trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects that it adequately considered the guidelines and there is no requirement that specific matters be given any particular weight. Both sentences were well below the statutory maximums allowed by law and were imposed concurrently.[2] Thus, under the instant circumstances, the trial court did not abuse its discretion in sentencing the defendant.
This assignment is therefore without merit.

CONCLUSION
For the foregoing reasons, the defendant's convictions and sentences be affirmed.
AFFIRMED.
NOTES
[1] Although the offenses in this case arise from a single course of conduct, the defendant committed two separate, distinct crimes. See and compare State v. Allen, 2001-2494 (La.6/21/02), 824 So.2d 344, and State v. Buttner, 489 So.2d 970 (La.App. 4th Cir. 1986), writ denied, 493 So.2d 641 (La. 1986).
[2] La. R.S. 14:31(B) provides in pertinent part:

Whoever commits manslaughter shall be imprisoned at hard labor for not more than forty years.
La. R.S. 14:27(D) provides that a person convicted of attempting to commit an offense (other than theft or receiving stolen goods, or offenses punishable by death or life imprisonment) shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both. Therefore, a person convicted of attempted manslaughter shall be imprisoned at hard labor for not more than 20 years.
A conviction for illegal use of a weapon while committing a crime of violence under La. R.S. 14:94(F), without enhanced circumstances, provides a sentencing range of 10 to 20 years, without benefit of probation, parole, or suspension of sentence.