# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-1242


**STATE OF LOUISIANA**

**VERSUS**

**REGINALD J. JULIEN**


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 46986
HONORABLE EDWARD B. BROUSSARD, DISTRICT JUDGE

**********

**OSWALD A. DECUIR**
**JUDGE**

**********

Court composed of John D. Saunders, Oswald A. Decuir, and Billy Howard Ezell, Judges.

**AFFIRMED WITH INSTRUCTIONS.**


**Laurie Anne Hulin**
**Assistant District Attorney**
**Fifteenth Judicial District**
**Vermilion Parish, Louisiana**
**100 North State Street, Suite 215**
**Abbeville, LA 70510**
**(337) 898-4320**
**Counsel for Appellee:**
      **State of Louisiana**

**Mark O. Foster**
**Louisiana Appellate Project**
**P. O. Box 2057**
**Natchitoches, LA 71457-2057**
**(318) 572-5693**
**Counsel for Defendant/Appellant:**
    **Reginald J. Julien**

**DECUIR, Judge.**

Defendant, Reginald J. Julien, was charged with aggravated assault with a firearm, a violation of La.R.S. 14:37.4. After trial by jury, he was convicted and sentenced to serve four years at hard labor with the Louisiana Department of Corrections, to be served concurrently with a sentence he was serving at the time of sentencing.

Defendant now appeals his conviction, arguing an insufficiency of the evidence and an error patent, arguing that the trial court failed to advise him of his delays for applying for post-conviction relief.

## FACTS

On December 6, 2006, Anthony Steed and Defendant got into an argument that resulted in a physical altercation. At some point, Defendant left the premises and returned with a weapon. The physical altercation continued, and Defendant picked up the firearm. The firearm was discharged without striking Mr. Steed. Defendant urged that the discharge of the firearm was accidental, but he was found guilty as charged at conclusion of the trial.

## TESTIMONY:

The first witness to testify was Anthony Atkins Steed, who testified that in December 2006 he was living at 401 North Guidry in Kaplan, Louisiana. He was living in the home of James Guidry, an old Navy buddy he met at the VA. He had been living with Mr. Guidry for sixteen days at the time of the incident.

On December 6, 2006, a man came into the house, unannounced, and asked Mr. Steed who he was. The man said he was a cousin of "James." He did not knock and just walked into the bedroom where Mr. Steed was located. When Mr. Steed asked who the man was, "[h]e got upset, asked me if I wanted to get bucked and he swung

at me." Mr. Steed was lying in bed at the time. Mr. Steed testified that the man was irritated and looked like he wanted to fight.

When the man swung, he missed Mr. Steed who then kicked the man twice in the chest. The man backed up a little and swung again, striking Mr. Steed twice, in the lip and the eye. Mr. Steed was still lying in bed. Mr. Steed testified:

> A      I got up. We went out into the kitchen. I told him I had just had surgery, that I couldn't do this. We wrestled a little bit more. We talked back and forth -- not talked; we cussed back and forth. I told him I was going to call Mr. Guidry and I did so. I got the phone and I called Mr. Guidry. I told him there was a gentleman in the house hitting me. I didn't know who he was. Mr. Julien said out loud, "It's Little Regg." James said, "I know who he is. I'll be there in just a little bit." As soon as I hung up the phone, Mr. Julien came up to me again and he wanted to fight again. He put up his fists again to fight me. I had no option but to try to defend myself. He swung at me again and missed. I swung; I hit him. He hit me a couple of more times.
>
> By this time, I had told him I had had enough. I couldn't take it anymore. I had a huge open wound in my side. I couldn't afford to get hit there. It was bad; I had a huge cut. I don't know how many staples I had; it was a lot.

Mr. Steed was recovering from surgery at the time of the incident. At one point, Mr. Steed testified Defendant went outside, and when he returned, he was holding something in his hand that he placed on the dryer. Defendant then put his hands up and they began to fight some more. Defendant then returned to the dryer and picked up what Mr. Steed then recognized to be a gun.

The witness identified the gun as a revolver with a six to eight inch barrel. Defendant pointed the gun at Mr. Steed and said: "Now talk." Mr. Steed was instructed to sit down on the bed, and did so. When Defendant first pointed the gun at him, Mr. Steed was in the kitchen, and the gun was aimed at his head. He moved into a bedroom that opened into the kitchen.

2

Defendant remained in the kitchen, but only about two to three feet away. Mr. Steed testified that he knew he had to do something, and he stood up and threw his arms up, striking the gun. As soon as he touched the gun, it went off. Mr. Steed felt a pain in his back and thought he had been shot.

Mr. Steed fell back in bed, and said "you shot me." Defendant started crying and saying that he did not shoot him. Mr. Steed grabbed the phone and dialed 911, and Defendant jumped on him and grabbed the phone.

According to Mr. Steed, Defendant started crying and saying he was sorry. Defendant then ran outside and returned with another man Mr. Steed did not know. Both men left, and Mr. Steed laid there until Mr. Guidry arrived, and the police were called. He gave a statement to the police officer and pointed out the bullet hole in the door and the wall.

On cross-examination, Mr. Steed stated that he later learned that Defendant was a cousin of Mr. Guidry, and did not know if he was accustomed to coming and going. After Defendant left the home, Mr. Steed did not call the police because Defendant had taken his cell phone.

Sergeant Bruce Ashley of the Kaplan Police Department testified that he responded to a "shots fired" call at 401 North Guidry on December 6, 2006. He entered the residence and spoke with the Victim who was sitting on a bed. The Victim said a guy tried to shoot him. He advised that Defendant was the person who tried to shoot him.

The Victim had no blood on him, but was sweaty, like he had been in an altercation. Upon examination of the room, the officer found a small hole in the door

3

and in the wall. In the hole in the wall, the officers found a small caliber slug, consistent with a handgun.

On cross-examination, the officer testified that they were unable to find a casing, which meant that the weapon was not an automatic. The police never recovered the weapon used. Defendant turned himself in to the police. A search of his apartment did not uncover anything of value to the investigation.

The next officer to testify was Sergeant Scott Lemarie, a detective with the police department. He too observed the holes in the wall of the residence and what appeared to be gunpowder residue. He actually retrieved the projectile. The projectile was placed into evidence. The officer explained that the projectile came from a .22 caliber revolver, based upon the absence of a cartridge.

Following the testimony of Sergeant Lemarie, both parties rested. Defendant was found guilty as charged.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there is one error patent which has been raised by Defendant.

Defendant correctly contends that he was not advised of the prescriptive period for filing an application for post-conviction relief, as required by La.Code Crim.P. art. 930.8. Thus, the trial court is directed to inform Defendant of the provisions of Article 930.8 by sending appropriate written notice to Defendant within ten days of the rendition of this opinion and to file written proof that Defendant received the notice in the record of the proceedings. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

4

# ANALYSIS

Defendant contends the evidence was insufficient to support his conviction. Defendant was convicted of aggravated assault with a firearm, a violation of La.R.S. 14:37.4, which provides:

> A. Aggravated assault with a firearm is an assault committed by the discharge of a firearm.
>
> B. For the purposes of this Section, "firearm" is defined as an instrument used in the propulsion of shot, shell, or bullets by the action of gunpowder exploded within it.
>
> C. Whoever commits an aggravated assault with a firearm shall be fined not more than five thousand dollars, or imprisoned for not more than five years, with or without hard labor, or both.

An assault is defined by La.R.S. 14:36, which states: "Assault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery."

In brief, counsel for Defendant concedes that: (1) Defendant pointed a revolver at Mr. Steed; and (2) Mr. Steed was in reasonable apprehension of receiving a battery. However, his sole argument is that Defendant is only guilty of a misdemeanor pursuant to La.R.S. 14:37. That statute requires only that an assault be committed with a dangerous weapon, as opposed to La.R.S. 14:37.4, which requires "discharge."

Defendant's argument is that the firearm was accidentally discharged upon being struck by Mr. Steed as he stood up. He contends that the discharge was unintentional.

In brief, the State argues:

> The trier of fact found that the discharge was not accidental. The gun remained under the defendant's control for the entirety. It never left his hand. The bump was without enough force to cause the defendant to loose his grip or control. It is unreasonable to conclude that this bump would cause a twenty-two caliber weapon to discharge. Also, the

defendant's apology after he fired the weapon is indicative of his guilt. Using their common sense and the evidence as a whole, the trier of fact concluded that Mr. Julien's finger pulled the trigger as he threatened the victim. This caused the discharge. It was not an accident. It is reasonable that the defendant should expect a criminal consequence from pointing a gun at a man's head, closing in on him, and discharging the weapon.

The definition of intent is found in La.R.S. 14:10:

Criminal intent may be specific or general:

(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.

(2) General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.

The application of "intent" to crimes found in our Criminal Code is provided

in La.R.S. 14:11:

The definitions of some crimes require a specific criminal intent, while in others no intent is required. Some crimes consist merely of criminal negligence that produces criminal consequences. However, in the absence of qualifying provisions, the terms "intent" and "intentional" have reference to "general criminal intent."

Appellate review of proof of the element of criminal intent is the same as a

*Jackson* review. *State v. Segura*, 07-685 (La.App. 5 Cir. 2/6/08), 979 So.2d 524, 528.

In *State v. Jackson*, 42,960, pp. 7-8 (La.App. 2 Cir. 2/13/08), 976 So.2d 279, 283, the

court stated:

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Tate*, 2001-1658 (La. 5/20/03), 851 So.2d 921, *cert. denied*, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); *State v. Murray*, 36,137 (La.App. 2d Cir.8/29/02), 827 So.2d 488, *writ denied*,

2002-2634 (La.9/5/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 2005-0477 (La. 2/22/06), 922 So.2d 517.

The appellate court does not assess the credibility of witnesses or reweigh evidence. *State v. Smith*, 1994-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Gilliam,* 36,188 (La.App. 2d Cir. 8/30/02), 827 So.2d 508, *writ denied*, 2002-3090 (La. 11/14/03), 858 So.2d 422. When there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Allen*, 36,180 (La.App. 2d Cir. 9/18/02), 828 So.2d 622, *writs denied*, 2002-2595 (La. 3/28/03), 840 So.2d 566, 2002-2997 (La. 6/27/03), 847 So.2d 1255, *cert. denied*, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).

The court in *State v. Miller*, 00-218, p. 16 (La.App. 4 Cir. 7/25/01), 792 So.2d 104, 115-16, *writ denied*, 01-2420 (La. 6/21/02), 818 So.2d 791 (emphasis added), held:

"General intent" exists when circumstances indicate that the prohibited result may reasonably be expected to follow from the offender's voluntary act, **irrespective of any subjective desire on the offender's part to have accomplished the result**. *State v. Elzie*, 343 So.2d 712 (La.1977). Though intent is a question of fact, it need not be proven as a fact; but may be inferred from the circumstances of the case. *State v. Phillips*, 412 So.2d 1061 (La.1982).

In *Jackson*, 976 So.2d 279, the defendant began firing a pistol at his girlfriend as she was leaving home to catch a bus. The victim escaped into her home, but a shot fired by defendant struck the back of a passing school bus and wounded a child on the bus. Defendant was charged with attempted manslaughter, and illegal use of a weapon while committing a crime of violence, a general intent crime, as noted by the court.

7

Defendant argued that after a jury found him guilty of having the specific intent to commit to kill the intended victim, it could not have found him guilty of having the general intent to convict him of illegal use of a weapon. The court stated:

> After the jury found that he had specific intent to kill Lajoy Livingston, the defendant argues that the jury could not have found the requisite general intent to convict him of illegal use of a weapon while committing aggravated criminal damage to property. To find the defendant guilty on this count, the jury was required to find that the defendant intentionally discharged his firearm under circumstances indicating that he, in the ordinary course of human experience, must have known that it was reasonably certain that one of the bullets would strike the bus, and that it was foreseeable that his action would endanger the lives of the children aboard. Because the crime of aggravated criminal damage to property is a general intent crime, the jury was not required to find that the defendant actively desired to hit the bus, only that hitting the bus was a reasonably certain outcome of his intentional discharge of the handgun.

*Id*. at 285.

In the instant case, the evidence proves that Defendant, after obtaining a firearm and pointing it at the victim, thus committing the crime of aggravated assault when doing so, possessed the general intent to fire the weapon, as he must have known that a prescribed consequence of doing so was the discharge of the weapon, whether such discharge occurred as a result of his intent to discharge, or from his negligence. It was not necessary for the jury to find that Defendant had any "subjective desire" to accomplish the result, but only "that the prohibited result" would "reasonably be expected to follow" from his voluntary act of introducing the gun into the situation.

Given that the Victim, despite recovering from surgery, had actively resisted Defendant's previous attempts to injure him, the jury could have reasonably concluded that Defendant must have known that when he confronted the Victim with

a firearm, the discharge of said firearm could reasonably be expected to follow. Accordingly, we find the evidence sufficient to support Defendant's conviction.

## DECREE

Defendant's conviction is affirmed. The trial court is directed to inform Defendant of the provisions of Article 930.8 by sending appropriate written notice to Defendant within ten days of the rendition of this opinion and to file written proof that Defendant received the notice in the record of the proceedings.

**AFFIRMED WITH  INSTRUCTIONS.**