# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30688

United States Court of Appeals
Fifth Circuit

**FILED**

April 10, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

RECHARD YOUNG, also known as Rechard Youg, also known as Richard Young,

      Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:16-CV-11300

Before SOUTHWICK, GRAVES, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

Appellant Rechard Young, a federal prisoner, appeals from the district court's denial of his 28 U.S.C. § 2255 motion. We REVERSE the district court's judgment, VACATE Young's entire sentence, and REMAND for resentencing.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-30688

## BACKGROUND

In 2008, Young pled guilty to possessing a firearm after a felony conviction pursuant to 18 U.S.C. § 922(g)(1). The statutory maximum term of imprisonment for possessing a firearm after a felony conviction is generally 10 years of imprisonment. *See* 18 U.S.C. § 924(a)(2). However, the Armed Career Criminal Act ("ACCA") increases the punishment range to 15 years to life imprisonment if the defendant has had three prior convictions for "a violent felony or a serious drug offense, or both, committed on occasions different from one another[.]" § 924(e)(1).

The superseding information to which Young pled guilty listed four prior felony convictions as the basis for the charge against him. Specifically, the information noted a 1997 Louisiana conviction for aggravated assault with a firearm, and three 1997 Louisiana convictions on serious drug offenses. Notably, the second and third serious drug offenses occurred on the same day (November 1, 1996); the first serious drug offense occurred on a different day from the other two offenses (October 31, 1996). The district court sentenced Young under § 922(g)(1) and enhanced Young's sentence under the ACCA to the mandatory minimum term of 15 years in prison. Young filed no direct appeal.

In 2016, Young moved to correct his sentence pursuant to 28 U.S.C. § 2255, arguing that his enhanced sentence under the ACCA is unconstitutional because he does not have at least three qualifying prior convictions for a violent felony, a serious drug offense, or both. First, Young argued that his motion is timely pursuant to § 2255(f) because it was filed within one year of the Supreme Court's decision in *Johnson v. United States*, which held that the

No. 17-30688

ACCA's residual clause[1] is unconstitutionally vague.  135 S. Ct. 2251 (2015). Second, Young argued that his underlying conviction for aggravated assault with a firearm is not a qualifying violent felony conviction under the ACCA's force clause.  Third, and finally, Young argued that his second and third underlying serious drug offense convictions were part of the same offense and, thus, he has only two, rather than three, qualifying serious drug offense convictions under the ACCA.

The district court determined that Young's § 2255 motion is timely but denied the motion, concluding that (1) Young's conviction for aggravated assault with a firearm is a qualifying violent felony conviction under the ACCA's force clause and (2) at least two of Young's three serious drug offense convictions are qualifying convictions under the ACCA.   The district court, however, did not decide whether Young had two or three qualifying serious drug offense convictions under the ACCA.

Young timely appealed.  Although the district court denied Young a certificate of appealability, this court granted him one, concluding that reasonable jurists could disagree on whether (1) Louisiana aggravated assault with a firearm constituted a violent felony under the ACCA and (2) Young had two or three qualifying prior serious drug offense convictions under the ACCA.

STANDARD OF REVIEW

The court reviews a "district court's factual findings relating to a § 2255 motion for clear error and its conclusions of law de novo." *United States v. Redd*, 562 F.3d 309, 311 (5th Cir. 2009) (italics omitted).

---

[1] The ACCA's residual and force clauses, which are relevant to this appeal, are defined *infra*.

3

No. 17-30688

DISCUSSION

On appeal, the parties dispute whether (1) a Louisiana aggravated assault with a firearm conviction—specifically, Louisiana Revised Statutes Annotated § 14:37.2 (1996)[2]—constitutes a prior violent felony conviction under the ACCA and (2) Young had two or three qualifying prior serious drug offense convictions under the ACCA.[3]  We address each issue in turn.

First, Young's Louisiana aggravated assault with a firearm conviction is not a qualifying violent felony conviction under the ACCA.  The ACCA defines a violent felony as a crime punishable by more than one year in prison that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the force clause), (2) is the enumerated offense of "burglary, arson, or extortion, or involves the use of explosives" (the enumerated offenses clause), or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the residual clause). § 924(e)(2)(B); *United States v. Taylor*, 873 F.3d 476, 477 n.1 (5th Cir. 2017). The force clause is the only relevant clause here.

In *Johnson*, the Court held that the residual clause is unconstitutionally vague and that an enhanced sentence imposed under the clause is therefore unconstitutional.  135 S. Ct. at 2557, 2563.[4]  Thus, Young's aggravated assault with a firearm conviction cannot stand under the residual clause.  Nor can

---

[2] Notably, the operative law at the time of Young's conviction has since been amended. *Compare* LA. REV. STAT. ANN. § 14:37.2 (1996) *with* LA. REV. STAT. ANN. § 14:37.4 (2012).

[3] For Young to succeed on appeal, we must conclude that (1) Young's Louisiana aggravated assault with a firearm conviction does not constitute a prior violent felony conviction under the ACCA and (2) the record is inconclusive as to whether Young has two or three qualifying prior serious drug offense convictions under the ACCA or the second and third serious drug offenses occurred simultaneously.  If we make one but not both conclusions, then Young will still have three qualifying prior convictions under the ACCA and his ACCA sentencing enhancement will stand.

[4] *Johnson* has no effect on the force or enumerated offenses clauses.  135 S. Ct. at 2563.  And *Johnson* applies retroactively to cases on collateral review. *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016).

No. 17-30688

Young's conviction stand under the enumerated offenses clause: the conviction is not for one of the enumerated offenses and does not involve the use of explosives. Accordingly, Young's conviction does not qualify as a violent felony under the ACCA unless it "has as an element the use, attempted use, or threatened use of physical force against the person of another" pursuant to the force clause. § 924(e)(2)(B)(i).

Generally, this court uses the categorical approach to determine whether a prior offense satisfies the ACCA's force clause, looking "only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *United States v. Montgomery*, 402 F.3d 482, 485 (5th Cir. 2005) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)). In other words, under this approach, we would "look solely to the statutory elements [of aggravated assault with a firearm] to ascertain whether [the] conviction satisfies the Force Clause." *Id.* at 486. But where the underlying statute of conviction describes separate offenses with distinct elements, the court applies the modified categorical approach to narrow the offense of conviction, consulting a limited class of documents to determine which offense formed the basis of the defendant's conviction. *See Descamps v. United States*, 570 U.S. 254, 257 (2013).

At the time of Young's conviction, Louisiana law defined aggravated assault with a firearm as "an assault committed by the discharge of a firearm as the dangerous weapon."[5] LA. REV. STAT. ANN. § 14:37.2 (1996). Louisiana law defined assault as, "an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." LA. REV. STAT. ANN. § 14:36 (1996). And Louisiana law defined battery as "the

---

[5] Louisiana law now defines aggravated assault with a firearm as "an assault committed with a firearm." LA. REV. STAT. ANN. § 14:37.4 (2012).

intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another." LA. REV. STAT. ANN. § 14:33 (1996).

"[I]f a statute lists means of committing a single offense, it is indivisible and must be taken as a whole instead of using the facts of the offense to narrow the statute." *United States v. Reyes-Contreras*, 910 F.3d 169, 174 (5th Cir. 2018) (en banc). Among other things, courts may look to jury instructions to determine whether listed items in a statute are means of committing the same offense or separate offenses with distinct elements. *See Mathis v. United States*, 136 S. Ct. 2243, 2256–57 (2015). The Louisiana jury instructions for the current, similarly-phrased aggravated assault with a firearm statute treat the statute as containing a single offense involving alternate means rather than as containing more than one distinct offense. 17 La. Civ. L. Treatise, Criminal Jury Instructions (3d ed. 2015) § 10:37 (providing a single instruction for aggravated assault with a firearm, which may be committed by discharging a firearm and either attempting to use force or violence on the victim with a firearm or intentionally placing the victim in reasonable apprehension of receiving a battery with a firearm). The parties agree, and the district court concluded, that the applicable Louisiana aggravated assault with a firearm statute here is indivisible and subject to the categorical approach. *See Mathis*, 136 S. Ct. at 2256. Applying the categorical approach, we ask whether Louisiana aggravated assault with a firearm satisfies § 924(e)'s force clause. It does not.

The parties agree that negligent uses of force do not satisfy the ACCA's force clause. *See Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) (concluding that the phrase "use . . . of physical force against the person or property of another" in 18 U.S.C. § 16's force clause—which is similar to the force clause in question here—"most naturally suggests a higher degree of intent than negligent or

merely accidental conduct"). Young contends that Louisiana employs an "exceptionally broad" definition of intent for aggravated assault with a firearm, so that the offense may be committed without a subjective desire to discharge the firearm, such as through the negligent discharge of a firearm. *See* Dane S. Ciolino, *The Mental Element of Louisiana Crimes: It Doesn't Matter What You Think*, 70 TUL. L. REV. 855, 857 (1996) ("[G]eneral intent . . . can be proved in Louisiana with evidence of mere negligence."). The government, however, argues that aggravated assault with a firearm can be committed "volitionally" only.

While the Louisiana Supreme Court has not addressed whether Louisiana aggravated assault with a firearm can be committed negligently, Louisiana appellate court decisions support Young's position. In *Louisiana v. Julien*, Louisiana's Third Circuit Court of Appeal held that a jury need "only [find] that the prohibited result[, i.e., discharging the firearm,] would reasonably be expected to follow from [the defendant's] voluntary act of introducing the gun into the situation." 34 So. 3d 494, 499 (La. Ct. App. 2010) (internal quotation marks omitted). This was true "whether such discharge occurred as a result of his intent to discharge, *or from his negligence.*" *Id.* (emphasis added). Further, in *Louisiana v. Qualls*, Louisiana's Second Circuit Court of Appeal concluded that, by discharging a firearm, the defendant committed the offense of aggravated assault with a firearm regardless of whether he "was actually trying to hit the victim." 921 So. 2d 226, 237 (La. Ct. App. 2006).

The government's reliance on *United States v. Valle-Ramirez* is misplaced. 908 F.3d 981 (5th Cir. 2018). There, this court determined that a Georgia aggravated assault statute met the use of force requirement in 18 U.S.C. § 16(a). *Id.* at 985–86. The court reasoned, "to commit the relevant assault under Georgia law, the defendant must intend to commit the act that

causes the victim to feel reasonable apprehension of immediate violent injury, though the defendant need not intend to cause the apprehension itself." *Id.* at 986. But the Louisiana statute here criminalizes a defendant's negligence in committing the act that accomplishes an assault. *See Julien*, 34 So. 3d at 499.

Nonetheless, the district court concluded that "[f]iring a gun in the presence of another person, whether intentional or reckless, clearly constitutes the use, attempted use, or threatened use of violent, physical force." The district court relied on *Voisine v. United States*, which—in the context of 18 U.S.C. § 921(a)(33)(A)'s force clause—concluded that the word "use" in the phrase "use of physical force" "does not demand that the person applying force have the purpose or practical certainty that it will cause harm, as compared with the understanding that it is substantially likely to do so." 136 S. Ct. 2272, 2279 (2016). In other words, the word "use" is "indifferent as to whether the actor has the mental state of intention, knowledge, or recklessness with respect to the harmful consequences of his volitional conduct." *Id.* *Voisine*, however, did not consider negligent conduct. *See id.* In other words, *Voisine* is unavailing to the government.

In an earlier case—*Leocal*—the Court examined 18 U.S.C. § 16's force clause, which states that a crime of violence means "an offense that has an element the use, attempted use, or threatened use of physical force against the person or property of another[.]" 543 U.S. at 5 (quoting § 16(a)). Section 16's force clause is similar to § 924(e)'s force clause, which, again, states that a qualifying violent felony "has as an element the use, attempted use, or threatened use of physical force against another[.]" § 924(e)(2)(B)(i). The *Leocal* court stated:

> The critical aspect of § 16(a) is that a crime of violence is one involving the "use . . . of physical force *against the person or property of another*." As we said in a similar context . . . , "use" requires active employment. While one may, in theory, actively

> employ *something* in an accidental manner, it is much less natural to say that a person actively employs physical force against another person by accident. Thus, a person would "use . . . physical force against" another when pushing him; however, we would not ordinarily say a person "use[s] . . . physical force against" another by stumbling and falling into him. When interpreting a statute, we must give words their ordinary or natural meaning. The key phrase in § 16(a)—the "use . . . of physical force against the person or property of another"—most naturally suggests a higher degree of intent than negligent or merely accidental conduct.

543 U.S. at 9 (internal quotation marks, citations, and parenthetical omitted) (emphasis in original); *see also United States v. Castleman*, 572 U.S. 157, 171 (2014) (recognizing *Leocal*'s holding that "use" requires more than negligent or accidental conduct); *United States v. Chan-Xool*, 716 F. App'x 274, 278 (5th Cir. 2017) (unpublished) ("Because [the state statute] can apply to merely negligent conduct, it cannot qualify as an element involving a use of force that must be at least reckless.").[6] Indeed, "*Voisine* reminds us that *Leocal* held use of physical force against another's person or property excludes merely accidental

---

[6] Although the Court decided *Leocal* before *Sessions v. Dimaya* held the residual clause of § 16(b) to be unconstitutionally vague, *Dimaya* does not disturb *Leocal*'s analysis of the force clause. *See* 138 S. Ct. 1204, 1215–16 (2018) (holding only that § 16(b) is unconstitutional and not discussing *Leocal*'s analysis of § 16(a)). Several other federal circuit courts have also applied, post-*Dimaya, Leocal*'s distinction between accidental or negligent conduct and intentional conduct in a use of force analysis. *See United States v. Simmons*, 917 F.3d 312, 321 (4th Cir. 2019), as amended (Mar. 6, 2019) (concluding that any of the forms of North Carolina assault may be established with negligence and therefore lack the requisite "use" of force under *Leocal*); *United States v. Bong*, 913 F.3d 1252, 1260–61 (10th Cir. 2019) (noting that "[t]he term 'use,' as employed in the ACCA's [force] clause, requires active employment rather than negligent or merely accidental conduct [under *Leocal*].") (internal quotation marks and citation omitted); *United States v. Vasquez-Gonzalez*, 901 F.3d 1060, 1066–67 (9th Cir. 2018) (noting that *Leocal* held that § 16(a) encompasses crimes with a higher level of intent than negligence or accident); *Lassend v. United States*, 898 F.3d 115, 131 (1st Cir. 2018) (noting *Leocal*'s requirement of intent greater than accident or negligence, finding the requirement met where the state offense required active and intentional engagement in the offense, and citing for this proposition *Stuckey v. United States*, 878 F.3d 62 (2d Cir. 2017), *cert. denied*, 139 S. Ct. 161 (2018)), *cert. denied*, 139 S. Ct. 1300 (2019); *Greer v. United States*, 749 F. App'x 887, 894 n.7 (11th Cir. 2018) (noting that *Leocal* interpreted "crime of violence" to generally exclude offenses which include accidental or negligent conduct).

No. 17-30688

conduct." *United States v. Mendez-Henriquez*, 847 F.3d 214, 220 (5th Cir.) (internal quotation marks and citation omitted), *cert. denied*, 137 S. Ct. 2177 (2017); *see also Voisine*, 136 S. Ct. at 2279 (noting that *Leocal* addressed accidental but not reckless conduct).

Because Louisiana aggravated assault with a firearm can be achieved through negligent conduct, it does not constitute a violent felony under § 924(e).

Second, the record is inconclusive as to whether Young's three prior convictions for serious drug offenses constitute three separate drug transactions under § 924(e)(1). Notably, Young does not argue that the district court improperly determined that Young's first drug offense constitutes a separate transaction from the second and third offenses. We address whether Young's second and third offenses constitute separate transactions or the same transaction under § 924(e)(1).

The ACCA requires that, to be counted separately, qualifying predicate offenses must "be committed on occasions different from one another." § 924(e)(1). "The critical inquiry" in determining whether criminal transactions occurred on different occasions is "whether the offenses occurred sequentially." *United States v. Fuller*, 453 F.3d 274, 278 (5th Cir. 2006). Offenses occur sequentially if they are "distinct in time" from one another. *United States v. White*, 465 F.3d 250, 253 (5th Cir. 2006) (internal quotation marks and citations omitted). Two prior offenses may be distinct in time even if they occur within minutes of one another. *Fuller*, 453 F.3d at 278–79. This court looks to whether the first offense was completed before the second began and whether the perpetrator "was free to cease and desist from further criminal activity" but instead "chose to initiate a new course of action and commit a separate offense." *See United States v. Ressler*, 54 F.3d 257, 260 (5th Cir. 1995) (internal quotation marks omitted).

10

No. 17-30688

Following *Shepard v. Unites States*, to determine whether two offenses occurred on different occasions, a court is permitted to examine only "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." 544 U.S. 13, 16 (2005); *Fuller*, 453 F.3d at 279 (same). In addition to *Shepard*-approved documents, a court may consider a defendant's admissions. *United States v. Mendoza-Sanchez*, 456 F.3d 479, 483 (5th Cir. 2006). However, a court cannot rely on a presentence investigation report's characterization of predicate offenses. *United States v. Garza-Lopez*, 410 F.3d 268, 273–74 (5th Cir. 2005). Nor can a court rely on police reports. *Shepard*, 544 U.S. at 16.

When *Shepard*-approved documents in a record are inconclusive as to whether predicate ACCA offenses occurred on separate occasions, this court has declined to affirm an ACCA enhancement. *See Fuller*, 453 F.3d at 279–80. Here, the charging document to which Young pled guilty is the only relevant *Shepard*-approved material. This document shows that Young was charged with three counts of distribution of cocaine: the first count for conduct on October 31, 1996; the second count for conduct on November 1, 1996; and the third count also for conduct on November 1, 1996.

Relying on *Fuller*, the government argues that, on its face, the charging document supports a finding that Young committed the drug transactions sequentially. *Fuller* is unavailing to the government. There, the court vacated the defendant's ACCA sentencing enhancement, which was based in part on two state convictions for burglary of a building on the same date. *Fuller*, 453 F.3d at 275–76, 279–80. The defendant argued that the enhancement was improper because the two burglary offenses were part of the same transaction. *Id.* at 278. The court stated that the indictments for each of the burglaries "charged Fuller with entering another person's trailer without the owner's

consent. No other *Shepard*-approved material appears in the PSR with respect to the . . . burglaries." *Id.* at 279. The court concluded that, "[o]n their face, the indictments support the district court's conclusion that [the defendant] committed the burglaries sequentially." *Id.* However, "[b]ased on the indictments alone," the court could not "determine as a matter of law that the burglaries occurred on different occasions." *Id.* Accordingly, the court held: "Because the record does not contain the written plea agreement, the plea colloquy, or other *Shepard*-approved material that might resolve this question, we must vacate [the defendant's] sentence with respect to the ACCA enhancement." *Id.* at 279–80. *Fuller*, then, is contrary to the government's position.

Nonetheless, the government argues that "Young has not pointed to anything in the state charging document that would contradict a finding that the drug convictions were separate transactions, nor has he sought to introduce additional approved documents." However, as in *Fuller*, the court cannot properly determine that the drug transactions occurred on separate occasions based on the *Shepard*-approved evidence in the record.

Notably, the government's argument appears to invoke the "*Barlow* burden." In *Barlow*, Barlow did not contest the separateness of his predicate ACCA offenses, and the court did not address this specific question. *See generally United States v. Barlow*, 17 F.3d 85 (5th Cir. 1994). Instead, Barlow contended that one of his prior predicate ACCA convictions suffered from a "constitutional infirmity." *Id.* at 89. Specifically, Barlow claimed that the prosecutor induced his guilty plea by promising that the government would not seek the death penalty; however, the government broke its promise and did just that. *Id.* The *Barlow* court applied this standard, which some courts refer to as the *Barlow* burden: "Once the government establishes the fact of a prior conviction based upon a guilty plea, the defendant must prove the invalidity of

the conviction by a preponderance of the evidence." *Id.*; *see also United States v. Williams*, 20 F.3d 125, 132–33 & n.8 (5th Cir. 1994) (applying the *Barlow* burden to a claim that predicate ACCA convictions were constitutionally invalid because of involuntary and unintelligently-given guilty pleas); *United States v. Owens*, 753 Fed. App'x 209, 213 (5th Cir. 2008) (unpublished) (referring to the standard outlined in *Barlow* as the "*Barlow* burden").

While we do not and need not apply the *Barlow* burden to the separateness inquiry here, we note that several of our unpublished opinions have applied the burden. *See Owens*, 753 Fed. App'x at 213; *United States v. Taylor*, 263 Fed. App'x 402, 404 (5th Cir. 2008) (unpublished); *United States v. Bookman*, 263 Fed. App'x 398, 400 (5th Cir. 2008) (unpublished); *United States v. Garcia*, 329 Fed. App'x 528, 529 (5th Cir. 2009) (unpublished); *United States v. Welk*, 379 Fed. App'x 411, 412 (5th Cir. 2010) (unpublished); *United States v. Martin*, 447 Fed. App'x 546, 548 (5th Cir. 2011) (unpublished); *see also* 5TH CIR. R. 47.5.4 ("Unpublished opinions issued on or after January 1, 1996, are not precedent, except [in limited circumstances such as] under the doctrine of res judicata[.]") (asterisk omitted); *Light-Age, Inc. v. Ashcroft-Smith*, 922 F.3d 320, 322 n.1 (5th Cir. 2019) (concluding that, while an unpublished opinion issued after January 1, 1996, is not binding precedent, "we may consider [such an] opinion as persuasive authority"). Each of these opinions is consistent with *Fuller*'s holding: when *Shepard*-approved documents in a record are inconclusive as to whether predicate ACCA offenses occurred on separate occasions, the defendant's sentence should be vacated.

*Bookman* and *Taylor* are illustrative. Both apply the *Barlow* burden and cite out-of-circuit opinions that they state "place the onus on the defendants to prove that prior offenses are not separate." *Bookman*, 263 Fed. App'x at 400 n.1; *Taylor*, 263 Fed. App'x at 404 n.1. For example, in *United States v. Hudspeth*, the Seventh Circuit stated that "the government must establish

that a defendant has three prior violent felony convictions" under § 924(e)(1) and can establish this through an unchallenged certified record of conviction or presentence investigation report. 42 F.3d 1015, 1019 n.6 (7th Cir. 1994). Then, the burden shifts "to the defendant to establish by a preponderance of the evidence that the prior convictions occurred on a single 'occasion,' and thus cannot be the basis for the sentence enhancement under § 924(e)(1)." *Id.* *Hudspeth* "essentially requires an ACCA enhancement even if the available *Shepard*-approved documents . . . [are] inconclusive as to whether the offenses occurred on the same occasion[.]" *Kirkland v. United States*, 687 F.3d 878, 888–89 (7th Cir. 2012).

The Seventh Circuit and other circuits no longer take the approach set out in *Hudspeth. Id.* at 888–89 ("When properly viewed in [the] post-*Shepard* context, we believe that the burden shifting scheme set forth in *Hudspeth* is no longer tenable[.]"); *see also id.* at 888–95 (explaining why requiring defendants to bear the burden of proof when they claim the invalidity of a prior conviction is tenable whereas requiring defendants to bear the burden to prove the separateness of offenses is not); *id.* at 895 ("[W]e believe that an ambiguous record regarding whether a defendant actually had the opportunity 'to cease and desist or withdraw from his criminal activity' does not suffice to support the ACCA enhancement."); *United States v. Barbour*, 750 F.3d 535, 543–46 (6th Cir. 2014) ("We are convinced that placing the burden on the government [for the purposes of a separate-offense inquiry] is the view shared by all our sister circuits that have squarely addressed the issue[.]") (collecting cases).

While the *Bookman* and *Taylor* courts ostensibly applied the *Barlow* burden and cited *Hudspeth*, they did not "place[] the burden on the defendant to put forth evidence that the prior offense occurred on the same occasion[.]" *Kirkland*, 687 F.3d at 894 (discussing *Bookman* in detail but also citing *Taylor*); *Bookman*, 263 Fed. App'x at 399–401; *Taylor*, 263 Fed. App'x at 404–

05. Instead, the *Bookman* and *Taylor* courts "indicated that the government must provide evidence that the offenses occurred on different occasions, and the defendant then bears the burden of challenging that evidence." *Kirkland*, 687 F.3d at 894; *see Bookman*, 263 Fed. App'x at 399–401 (affirming ACCA enhancement where (1) the government submitted *Shepard*-approved documents indicating that Bookman's predicate ACCA offenses were committed on different dates and (2) the defendant did not submit any evidence that his predicate offenses occurred simultaneously); *Taylor*, 263 Fed. App'x at 404–05 (affirming ACCA enhancement where (1) the indictments and judgments for the predicate ACCA offenses established that the offenses occurred on separate occasions and (2) the defendant did not submit any evidence contradicting the *Shepard*-approved documents); *see also Barbour*, 750 F.3d at 544–546 (agreeing with the *Kirkland* court's interpretation of *Bookman*).  In *Owens*, we more explicitly did this, stating that the government did not carry its *Barlow* burden based on the *Shepard*-approved documents in the record, specifically, indictments and judicial confessions.  *Owens*, 753 Fed. App'x at 214–15.  While Owens referred to committing two "crimes," "there is ambiguity as to whether 'crimes' connotes the two convictions arising out of a single criminal transaction or two separate criminal transactions."  *Id.* at 215.  The *Owens* court explained:

> If the *Barlow* burden had already shifted to Owens, we would agree with the Government that Owens' ambiguous references to a second crime would not help his cause.  But that is not the situation we face: the Government has proved only two—and not three—predicate violent felonies, and so the *Barlow* burden remains unmoved.

*Id.* at 215.

The Seventh Circuit also noted that placing the initial burden on the government is consistent with *Fuller*.  *Kirkland*, 687 F.3d at 895 ("Despite [the *Bookman* court] having cited the burden shifting scheme set forth in *Hudspeth*,

[the Fifth Circuit] has declined to apply the ACCA enhancement when faced with an inconclusive record.") (citing *Fuller*, 453 F.3d at 279); *see also id.* at 889 ("[W]henever we have had doubts as to whether the record indicated that the offenses occurred on separate occasions, we have declined to use the offense as a predicate conviction for the ACCA enhancement or remanded the case to the district court for further factfinding."); *Owens*, 753 Fed. App'x at 213–14 (interpreting *Fuller* the same as the *Kirkland* court). Nonetheless, the *Taylor* court stated that, "though the *Fuller* court never addressed the *Barlow* standard," "the *Fuller* court implicitly found that Fuller had carried his burden of proof by supplying some evidence that his offenses did not occur on different occasions." *Taylor*, 263 Fed. App'x at 405. This a misstatement. It is true that "Fuller testified [at his sentencing hearing] that he and a friend entered into different buildings (or trailers) simultaneously." *Fuller*, 453 F.3d at 278. But the *Fuller* court stated:

> The district court found that Fuller['s testimony] was not credible and that the robberies had occurred at least minutes apart. Fuller argues on appeal that *nothing in the record* supports the district court's determination that the burglaries occurred on different occasions.

*Id.* (emphasis added). The *Fuller* court did not rely on or mention again Fuller's testimony. Instead, the *Fuller* court looked only at the *Shepard*-approved indictments for the predicate ACCA burglaries and stated that, "[b]ased on the indictments alone, . . . we cannot determine as a matter of law that the burglaries occurred on different occasions." *Id.* at 279. For this reason, the *Fuller* court vacated Fuller's sentence. *Id.* at 279–80. In any case, as discussed above, even the *Taylor* court placed the burden on the government to prove that the offenses occurred on separate occasions; it simply found that the government had met this burden and that the burden therefore shifted to

the defendant to contradict the government. *See Taylor*, 263 Fed. App'x at 404–05.

All told, we see no reason to apply the *Barlow* burden here. We need only rely on our binding precedent in *Fuller* to conclude that the ACCA enhancement was improperly applied here. Nor are our opinions applying *Barlow* inconsistent with *Fuller*.

Ultimately, the *Shepard*-approved documents in the record are inconclusive as to whether Young's prior serious drug offense convictions constitute three separate transactions under § 924(e).

## CONCLUSION

Because Louisiana aggravated assault with a firearm can be achieved through negligent conduct, it does not constitute a violent felony under § 924(e). Further, the record does not support a finding that Young's second and third serious drug offenses were "committed on occasions different from one another[.]" § 924(e). Accordingly, based on the record, Young does not have three qualifying prior convictions under the ACCA. The court REVERSES the district court's denial of Young's § 2255 motion, VACATES Young's entire sentence, and REMANDS for resentencing.